MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 190
Docket:      Pen-16-316
Argued:      May 12, 2017
Decided:     September 7, 2017
Revised:     December 7, 2017

Panel:       ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

FEDERAL NATIONAL MORTGAGE ASSOCIATION

v.

PATRICIA W. DESCHAINE et al.

HJELM, J.

[¶1]  In 2012, a complaint for residential foreclosure filed by Federal National Mortgage Association (Fannie Mae) against Patricia W. Deschaine and Paul J. Deschaine was dismissed with prejudice because the parties failed to comply with the court's pretrial order.  Fannie Mae did not seek post-judgment or appellate relief, and so the judgment became final.  The following year, Fannie Mae filed a second complaint for foreclosure involving the same property, based on the same note and mortgage, and against the same mortgagors.  The Superior Court (Penobscot County, *Anderson, J.*) ultimately granted the Deschaines' motion for summary judgment on Fannie Mae's complaint and on their counterclaims to quiet title and for a declaratory judgment, and denied Fannie Mae's cross-motion for summary judgment on

its complaint.  Applying our decision in *Johnson v. Samson Construction Co.*, the court concluded that this second foreclosure action is barred as a matter of law by the judgment dismissing with prejudice the earlier foreclosure action. 1997 ME 220, ¶ 8, 704 A.2d 866.  On this appeal by Fannie Mae, we conclude that the court correctly determined that this second foreclosure claim is precluded by principles of res judicata, and we affirm the judgment.[1]

## I.  BACKGROUND

[¶2]  The summary judgment record contains the following facts, which are not in dispute.  *See Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 7, 150 A.3d 793.

[¶3]  In October 2004, the Deschaines executed a promissory note in favor of First Horizon Home Loan Corporation in the principal amount of $127,920.  As security for the note, the Deschaines also executed a mortgage on residential property located in Lincoln in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as "nominee" for First Horizon.[2]  Fannie

---

[1]  Amicus briefs have been filed by National Consumer Law Center, National Association of Consumer Advocates, Jerome Frank Legal Services Corporation, and Maine Attorneys Saving Homes; Maine Bankers Association and The National Mortgage Bankers Association; Pine Tree Legal Assistance; Gerald F. Petruccelli; and Doonan, Graves & Longoria, LLC.  *See* M.R. App. P. 9(e).

[2]  Later, in April 2011, the United States Bankruptcy Court for the District of Maine (*Haines, J.*) granted the Deschaines' petition for a discharge in bankruptcy pursuant to 11 U.S.C.S. § 727 (LEXIS through Pub. L. No. 115-50).  As a result of the discharge, the Deschaines can no longer be held personally liable for their obligations under the note and mortgage.  *See* 11 U.S.C.S. § 524(a)(1)

3

Mae eventually acquired the note endorsed in its favor. MERS purported to assign the mortgage to Fannie Mae in June 2011, but because MERS possessed only the right to record the mortgage, the assignment conveyed nothing more than that right. *See Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶¶ 15-16, 96 A.3d 700; *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶¶ 9-11, 2 A.3d 289.

[¶4] Paragraph 7(C) of the note and Paragraph 22 of the mortgage contain acceleration clauses, which provide that if the borrower fails to satisfy an obligation under either instrument and fails to timely cure the default after being notified of it, the lender may require "immediate payment in full" of the amount then remaining unpaid under the loan documents—including the total balance of principal and interest under the note and any additional fees and charges allowed by the note and mortgage.

[¶5] Additionally, Paragraph 19 of the mortgage is a reinstatement provision, stating that "even if [the l]ender has required immediate payment

---

(LEXIS through Pub. L. No. 115-51) (stating that a discharge in a Chapter 7 bankruptcy "voids any judgment any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged"). Because a discharge in bankruptcy does not extinguish a valid lien on a property, however, that discharge does not preclude Fannie Mae from enforcing its security interest in an *in rem* foreclosure proceeding. *See Johnson v. Home State Bank*, 501 U.S. 78, 82-84 (1991) ("[A] discharge [in a Chapter 7 liquidation] extinguishes *only* the personal liability of the debtor. . . . [A] creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." (citations and quotation marks omitted)); *New Eng. Merchs. Nat'l Bank v. Herron*, 243 A.2d 722, 726 (Me. 1968).

in full, [the borrower] may have the right to have enforcement of [the mortgage] discontinued" if, among other things, the borrower "pay[s] to [the l]ender the full amount that then would be due under [the mortgage] and the [n]ote as if immediate payment in full had never been required" before the earliest of the date a foreclosure judgment is issued, five days prior to the sale of the property, or "such other period as [a]pplicable [l]aw might specify for the termination of [the] right to reinstate." Paragraph 19 further provides that if the borrower exercises her right of reinstatement, "the [n]ote and this [s]ecurity [i]nstrument will remain in full effect as if immediate payment in full had never been required."

[¶6] In September 2011, Fannie Mae issued to the Deschaines a notice of default and right to cure because, among other things, they had not made any monthly payments on the note since January 2011. The Deschaines failed to pay the stated amount due—$7,719.33—by the date specified in the notice. As a result, in December 2011 Fannie Mae filed a foreclosure complaint in the District Court (Lincoln). In its complaint, Fannie Mae alleged, "[I]n accordance with the terms of the [l]oan [d]ocuments, [Fannie Mae] has declared the entire outstanding principal amount, accrued interest thereon, and all other sums due under the [l]oan [d]ocuments to be presently due and payable."

5

Specifically, Fannie Mae alleged that the amount due included a principal balance of $122,712.93, which, together with accrued interest, fees, and other charges, resulted in a total amount due of $131,944.56.

[¶7] In June 2012, the court (*Stitham, J.*) issued a trial management order stating that neither party had complied with an earlier order that had established a deadline for the parties to exchange witness and exhibit lists, and warning the parties that sanctions would be imposed if they did not comply with a revised deadline. *See* M.R. Civ. P. 16A(a), (d) (authorizing a court to dismiss an action with prejudice for a party's failure to comply with a pretrial order). The following month, the court issued a judgment stating that there had been "no filings by either party," and dismissed Fannie Mae's foreclosure complaint "with prejudice." Fannie Mae did not seek any type of relief from the dismissal through a post-judgment motion or an appeal, and so the judgment became final.

[¶8] In September 2013—more than one year after the first foreclosure action had been dismissed—Fannie Mae sent a new notice of default to the Deschaines, this time stating that, among other grounds for a default, the Deschaines had failed to make payments on the note since February 2011. The Deschaines did not take the actions specified in the notice to cure the

purported default, and in December 2013 Fannie Mae filed a complaint in the Superior Court (Penobscot County), which, as later amended, requested a judgment of foreclosure and other relief based on theories of equitable mortgage and unjust enrichment.[3] In both the original and amended complaints, Fannie Mae alleged, "[I]n accordance with the terms of the [n]ote and [m]ortgage, [Fannie Mae] has declared the entire outstanding principal amount, accrued interest thereon, and all other sums due under the [n]ote and [m]ortgage to be presently due and payable."

[¶9] After an unsuccessful mediation session held in the summer of 2014, the Deschaines filed an answer that denied many of the allegations in the amended complaint and asserted, among others, the affirmative defenses of lack of standing and res judicata. The Deschaines' responsive pleading included counterclaims to quiet title and for a declaratory judgment that, as a result of the dismissal with prejudice of Fannie Mae's prior foreclosure complaint, Fannie Mae was no longer entitled to enforce the mortgage and so the Deschaines held title to the property unencumbered by the mortgage in favor of Fannie Mae.

---

[3] The amended complaint named 21st Mortgage Corporation as a party-in-interest because it allegedly holds a junior interest in the mortgaged property. *See* 14 M.R.S. § 6321 (2013), *amended by* P.L. 2013, ch. 555, § 2 (effective Aug. 1, 2014); P.L. 2015, ch. 229, § 1 (effective October 15, 2015). That entity did not participate in either the trial court proceedings or this appeal.

[¶10]   In January 2015, Fannie Mae obtained an assignment of the mortgage from the successor-in-interest to First Horizon, the original lender, and thus acquired standing to pursue this second foreclosure action against the Deschaines, which had already been pending for over a year.  *See Greenleaf*, 2014 ME 89, ¶ 17, 96 A.3d 700.

[¶11]   In November 2015, the Deschaines moved for summary judgment on their counterclaims and on all counts of Fannie Mae's complaint. *See* M.R. Civ. P. 56.  With the motion, the Deschaines filed a statement of material facts, *see* M.R. Civ. P. 56(h)(1), in which they asserted that the notice of default issued by Fannie Mae in September 2011 "resulted in the acceleration of the mortgage debt."  In support of this assertion, the Deschaines cited to the 2011 foreclosure complaint as one of several record references. *See* M.R. Civ. P. 56(h)(4).  Based on that assertion and our decision in *Johnson*, the Deschaines argued that Fannie Mae was barred from bringing a second foreclosure claim and that they were therefore entitled to a judgment as a matter of law on that claim and on their counterclaims.

[¶12]  In its opposition to the Deschaines' motion, Fannie Mae disputed the assertion that the debt was accelerated in the 2011 action, characterizing it as a legal conclusion that did not require a response.   Fannie Mae

simultaneously filed its own motion for summary judgment on each count of its complaint. In its statement of material facts, Fannie Mae reiterated allegations it had made in its complaint, including the Deschaines' failure, since February 2011, to make principal and interest payments due pursuant to the note, among other grounds for default. Fannie Mae argued that it was not precluded from bringing a second foreclosure claim against the Deschaines because the 2013 action was based on new breaches of the note and mortgage that had not been at issue in the earlier proceeding and because there had not been an effective acceleration of the debt in that proceeding.

[¶13] In June 2016, the court (*Anderson, J.*) granted the Deschaines' motion for summary judgment on both Fannie Mae's complaint and their counterclaims, and denied Fannie Mae's cross-motion for summary judgment. The court concluded, as a matter of law, that each of Fannie Mae's claims was barred by res judicata, and alternatively that in the circumstances of this case Fannie Mae was not entitled to relief on its equitable claims. As to the counterclaims, the court concluded that the Deschaines were not subject to any remaining obligation created by the note and mortgage because Fannie Mae was "barred from enforcing the note," and the Deschaines were therefore entitled to a declaratory judgment that they held title to the Lincoln property

unencumbered by the mortgage in favor of Fannie Mae. *See* 14 M.R.S. § 6206 (2016) ("If it appears that nothing is due on the mortgage, judgment shall be rendered for the defendant and for his costs, and he shall hold the land discharged of the mortgage."). Fannie Mae timely appealed. *See* 14 M.R.S. § 1851 (2016); M.R. App. P. 2(b)(3).

## II.  DISCUSSION

[¶14]  Fannie Mae argues that the court erred by concluding, as a matter of law, that the present foreclosure action is barred by the doctrine of res judicata.[4]  "We review a grant of a summary judgment on a res judicata issue de novo, viewing the record in the light most favorable to the party against whom judgment has been granted to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Wilmington Tr. Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 6, 81 A.3d 371 (quotation marks omitted).

---

[4]  In its summary of the issues on appeal, Fannie Mae also states as an issue that the court erred by concluding that its claims to enforce an equitable mortgage and for unjust enrichment were precluded as a matter of law.  Because Fannie Mae fails to develop that issue in its brief, we do not address it. *See Bayview Loan Servicing v. Bartlett, LLC*, 2014 ME 37, ¶ 15 n.5, 87 A.3d 741 (stating that a party waives any argument that it fails to adequately develop in briefing).  Fannie Mae does not argue that the court erred by denying its cross-motion for summary judgment on its foreclosure claim.  Rather, Fannie Mae argues that it should "be allowed to *proceed* on its foreclosure claim"—in other words, it argues the court did *not* err by denying its summary judgment motion, which, if granted, would have precluded a trial.  (Emphasis added.)  Our discussion is therefore limited to whether the court erred by granting the Deschaines' motion for summary judgment on Fannie Mae's foreclosure complaint and on their counterclaims. *See Thurston v. Galvin*, 2014 ME 76, ¶ 5 n.1, 94 A.3d 16 (stating that an issue not raised on appeal is deemed waived).

[¶15]  The doctrine of res judicata prevents "a party and its privies . . . from relitigating claims or issues that have already been decided." *Portland Co. v. City of Portland*, 2009 ME 98, ¶ 22, 979 A.2d 1279.  The doctrine "has two components: collateral estoppel, also known as issue preclusion, and claim preclusion."  *Wilmington Tr. Co.*, 2013 ME 94, ¶ 7, 81 A.3d 371 (quotation marks omitted).  Claim preclusion, which is the component at issue in this case, "bars the relitigation of claims if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action."[5]  *Id.* (quotation marks omitted).

[¶16]  Fannie Mae does not dispute that the same parties were involved in both the 2011 and 2013 foreclosure actions.

[¶17]  Additionally, as Fannie Mae acknowledged at oral argument, because the dismissal with prejudice in the 2011 action was imposed as a sanction pursuant to Rule 16A(d) based on both parties' failure to comply

---

[5] In contrast, issue preclusion "merely prevents the reopening in a second action of an issue of fact actually litigated and decided in an earlier case." *Johnson v. Samson Constr. Corp.*, 1997 ME 220, ¶ 6, 704 A.2d 866 (quotation marks omitted).  Because the question here is whether the 2011 action prohibits the relitigation of *an entire cause of action*—namely, Fannie Mae's claim for residential foreclosure—and is not limited to a single issue of fact, *see id.*, we address only the claim preclusion component of res judicata.

with a scheduling order, that dismissal has the same effect as an adjudication on the merits of Fannie Mae's foreclosure complaint regardless of whether Fannie Mae had standing at the time of the dismissal to pursue foreclosure.[6] *See Green Tree Servicing, LLC v. Cope*, 2017 ME 68, ¶¶ 17-18 & n.10, 158 A.3d 931. The dismissal is therefore a valid final judgment for purposes of res judicata. *See Penkul v. Matarazzo*, 2009 ME 113, ¶ 8, 983 A.2d 375 ("For a valid final judgment to have preclusive effect, it must be made on the merits of the case."); *Johnson*, 1997 ME 220, ¶¶ 3, 8, 704 A.2d 866 (concluding that a judgment dismissing the plaintiff's foreclosure complaint with prejudice based on its failure to timely file a report of conference of counsel "operated as an adjudication on the merits" (quotation marks omitted)).

[¶18] We therefore proceed to address the remaining element of res judicata, namely, whether the matters presented for decision in this foreclosure action were, or might have been, litigated in the 2011 foreclosure

---

[6] Any assertion to the contrary would have been unavailing in any event. Fannie Mae may not now collaterally attack the earlier judgment of dismissal with prejudice (i.e., on the merits) based on its alleged lack of standing in the 2011 action in an attempt to render that judgment void or limit its preclusive effect, because Fannie Mae failed to raise the standing issue during those earlier trial court proceedings or through a timely appeal from the dismissal. *Cf. Wells Fargo Bank v. White*, 2015 ME 145, ¶¶ 10-13, 127 A.3d 538 (holding that the court did not err or abuse its discretion by denying a plaintiff's M.R. Civ. P. 60(b)(4) request for relief from a judgment of foreclosure based on the plaintiff's contention that the judgment was void for want of standing, because the plaintiff had the opportunity to raise the standing issue during the trial court proceedings but did not do so).

action. *See Wilmington Tr. Co.*, 2013 ME 94, ¶ 7, 81 A.3d 371. To answer that question, we must determine

> whether the same cause of action was before the court in the prior case. We define a cause of action through a transactional test, which examines the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong. . . . Claim preclusion may apply even where a suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case.

*Id.* ¶ 8 (citations, alterations, and quotation marks omitted).

[¶19] Claim preclusion "is grounded on concerns for judicial economy and efficiency, the stability of final judgments, and fairness to litigants." *Id.* ¶ 6. The doctrine promotes those goals by preventing a party "from splintering his or her claim and pursuing it in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim that the litigant had a reasonable opportunity to argue in the prior action." *Johnson*, 1997 ME 220, ¶ 7, 704 A.2d 866 (quotation marks omitted).

[¶20] We previously addressed claim preclusion in the foreclosure context in *Johnson*. In that case, the mortgagee commenced a foreclosure action in August 1990 alleging that the mortgagor had defaulted by failing to

make the periodic payment due on the note in May 1990; that the mortgagor failed to timely cure the default; and that therefore, pursuant to the acceleration clause in the note, the mortgagee was entitled to a judgment for the entire unpaid principal balance. *Id.* ¶¶ 2-3. Four years later, the court dismissed the foreclosure action with prejudice after the mortgagee failed to timely file a court-ordered report of conference of counsel. *Id.* ¶ 3. The mortgagee then filed a second foreclosure complaint in August 1995, this time alleging that the mortgagor had failed to make any payments due on the note since September 1990 and again seeking a judgment for the entire unpaid principal balance. *Id.* ¶ 4. Rejecting the mortgagee's argument that the first judgment should only bar claims based on defaults that occurred *before* the first action was filed, the trial court granted the mortgagor's motion for summary judgment based on res judicata. *Id.*

[¶21]  We affirmed the court's decision on appeal. *Id.* ¶¶ 1, 8. We reasoned that once the mortgagor "triggered the acceleration clause of the note" by "demand[ing] payment of the entire unpaid principal balance," the installment contract, which "required 240 equal monthly payments of principal and interest[,] . . . became indivisible. The obligations to pay each installment merged into one obligation to pay the entire balance on the note."

*Id.* ¶ 8. Accordingly, we concluded, as a matter of law, that the judgment dismissing the first foreclosure complaint with prejudice barred the second foreclosure complaint, "which allege[d] precisely what the complaint in the first action alleged: that [the mortgagor] defaulted on the note and that [the mortgagee was] entitled to a judgment for the amount due under the note." *Id.* We stated that the mortgagee could not "avoid the consequences of his procedural default . . . by attempting to divide a contract which became indivisible when he accelerated the debt in the first lawsuit." *Id.*

[¶22] *Johnson* fully disposes of the issue in this case. The Deschaines' promissory note requires 360 equal monthly payments of principal and interest. Paragraph 7(C) of the note states, however, that if the borrower fails to "pay the full amount of each monthly payment on the date it is due . . . the [n]ote [h]older may send [the borrower] a written notice telling [the borrower] that if [she] do[es] not pay the overdue amount by a certain date, the [n]ote [h]older may require [the borrower] to pay immediately the full amount of [p]rincipal that has not been paid and all the interest that [the borrower] owe[s] on that amount." An acceleration clause at Paragraph 22 of the mortgage states that if the borrower "fail[s] to keep any promise or agreement made in this [s]ecurity [i]nstrument, including the promises to pay

when due the [s]ums [s]ecured," and fails to timely cure the default after being notified of it, then the "[l]ender may require that [the borrower] pay immediately the entire amount then remaining unpaid under the [n]ote and under this [s]ecurity [i]nstrument . . . without making any further demand for payment." Paragraph 22 further provides, "If [l]ender requires immediate payment in full, [l]ender may bring a lawsuit to take away all of [the borrower's] remaining rights in the [p]roperty and have the [p]roperty sold."

[¶23] It is undisputed that in September 2011 Fannie Mae sent the Deschaines a notice of default informing them that they had failed to make monthly payments on the note since January 2011, and stating that if the Deschaines failed to cure the default "within 35 days of receipt of this notice, the balance of the [n]ote may be deemed accelerated without further demand, and the [l]ender may proceed with foreclosure of the [m]ortgage." It is also undisputed that the Deschaines failed to timely cure the default. Accordingly, the necessary predicates for acceleration as specified in Paragraph 7(C) of the note and Paragraph 22 of the mortgage—namely, a default, a subsequent notice of default, and a failure to cure the default—were fulfilled. Then, in December 2011, Fannie Mae filed a foreclosure complaint alleging that "in accordance with the terms of the [l]oan [d]ocuments, [Fannie Mae] *has*

*declared* the entire outstanding principal amount, accrued interest thereon, and all other sums due under the [l]oan [d]ocuments to be presently due and payable."[7]  (Emphasis added.)  If Fannie Mae in fact accelerated the debt in the 2011 action—as it had alleged—then this case would be indistinguishable from *Johnson* because Fannie Mae would have placed the entire outstanding balance on the note at issue in the first case, precluding any future separate action to recover the same debt.

[¶24]  In an attempt to avoid the effects of *Johnson*, Fannie Mae makes several arguments to support its contention that the record does not conclusively establish that acceleration occurred in the 2011 action.

[¶25]  First, Fannie Mae contends that the acceleration provisions in the note and mortgage, which state that the lender "may" require immediate payment in full upon the borrower's failure to cure a default, merely give the lender the *option* to accelerate the debt and that Fannie Mae did not indisputably exercise that option.  In contrast, the note in *Johnson* stated in mandatory terms that upon a borrower's failure to cure a default "the entire unpaid principal and accrued interest *shall* become immediately due and

---

[7] We note that according to its own complaint, filed in December 2011, Fannie Mae alleged that the principal balance alone that was due from the Deschaines exceeded $122,000, in contrast to the $7,719.33 required to cure the default as stated in the notice of default issued by Fannie Mae only one month earlier.

payable without further demand." *Johnson*, 1997 ME 220, ¶¶ 2, 8, 704 A.2d 866 (emphasis added) (quotation marks omitted).

[¶26]   In the circumstances of this case, however, the permissive acceleration language in the Deschaines' note and mortgage does not make *Johnson* distinguishable because, as shown in the summary judgment record, Fannie Mae exercised its optional right to accelerate the entire obligation. When, as here, a note contains an optional acceleration clause, some affirmative action is required by the note holder to provide notice to the borrower that the holder has exercised that option.   *See, e.g.*, *Hassler v. Account Brokers of Larimer Cty., Inc.*, 274 P.3d 547, 553-54 (Colo. 2012); *Reano v. U.S. Bank, Nat'l Ass'n*, 191 So. 3d 959, 961 (Fla. Dist. Ct. App. 2016); *Bischoff v. Cook*, 185 P.3d 902, 911 n.8 (Haw. Ct. App. 2008); *First Fed. Sav. & Loan Ass'n of Gary v. Stone*, 467 N.E.2d 1226, 1232 (Ind. Ct. App. 1984).   The filing of a foreclosure complaint "constitutes a valid exercise of a mortgagee's acceleration right" and is sufficient to provide notice to the mortgagor. *Hartford Fed. Sav. & Loan Ass'n v. Tucker*, 491 A.2d 1084, 1086 (Conn. 1985); *see also FAS Capital, LLC v. Carr*, 7 F. Supp. 3d 1259, 1270 (N.D. Ga. 2014); *Reano*, 191 So. 3d at 961; *Bischoff*, 185 P.3d at 911 n.8; C.T. Drechsler, Annotation, *What is Essential to Exercise of Option to Accelerate Maturity of Bill*

*or Note*, 5 A.L.R.2d 968 § 5[a] (1949) ("The institution of a suit for the whole debt is, of course, the most solemn form in which the holder can exercise his option. This is well recognized and it is, hence, generally held that the institution of a suit on the bills or notes is notice of the most unequivocal character that the holder wishes to avail himself of his option for acceleration.").

[¶27] Here, in its 2011 complaint for foreclosure, Fannie Mae alleged—subject to the requirements of M.R. Civ. P. 11(a)—that it had declared the entire unpaid principal balance to be due immediately. Accordingly, Fannie Mae's own complaint in the 2011 proceeding establishes that it exercised its right to accelerate the underlying debt on the note, and it may not now argue otherwise.[8]

[¶28] Fannie Mae next argues that under the parties' mortgage contract an attempted acceleration is not effective unless and until the court enters a

---

[8] This case is therefore distinguishable from *Wilmington Trust Co. v. Sullivan-Thorne*, where we concluded that the summary judgment record did not establish that the mortgagee had accelerated a promissory note in previous litigation between the parties. 2013 ME 94, ¶ 12 n.4, 81 A.3d 371. In the first action, the mortgagee merely sent the mortgagor a notice stating that it would accelerate the debt if the mortgagee failed to cure the default, but did not actually commence a foreclosure proceeding carrying out that threatened action. *See id.* ¶¶ 3-4, 12 n.4. Rather, the mortgagee, which the mortgagor brought in as a third-party defendant, filed a counterclaim against the mortgagor, but the counterclaim did not clearly place the full unpaid principal balance at issue and also was not a claim for foreclosure. *See id.* ¶¶ 4, 11-12. We stated that *Johnson* did not bar the mortgagee from bringing the later foreclosure action because the underlying debt had not been accelerated. *Id.* ¶ 12 n.4.

foreclosure judgment, because until that time the mortgagor has the right under Paragraph 19 to "discontinue[]" enforcement of the mortgage. The mortgagor may do so by paying the mortgagee "the full amount that then would be due under [the mortgage] and the [n]ote as if immediate payment in full had never been required," thereby reinstating the parties' prior contractual relationship with the same continuing obligation on the part of the mortgagor to make installment payments. In Fannie Mae's view, acceleration occurs only if the borrower *fails to take* certain actions to stop foreclosure, thereby putting the onus on *the borrower* to elect whether acceleration by the lender occurs.

[¶29] Fannie Mae's argument misconstrues the nature of its right to accelerate. Pursuant to Paragraph 7(C) of the note and Paragraph 22 of the mortgage, acceleration is *the lender's* unilateral right, upon stated conditions, to require "immediate payment in full" of the amount then remaining unpaid under the loan documents "without making any further demand for payment." The loan documents therefore establish that acceleration was not dependent on the Deschaines' failure exercise their rights under Paragraph 19 of the mortgage. Rather, as we have discussed, *see supra* ¶¶ 26-27, the acceleration occurred here no later than when Fannie Mae commenced the first

foreclosure action and declared in its complaint that the *entire* amount the Deschaines were obligated to pay pursuant to the loan documents was then due. Further, it is undisputed that in the 2011 action the Deschaines did not take the actions required by Paragraph 19 to discontinue Fannie Mae's right to foreclose prior to entry of the dismissal with prejudice. Accordingly, even assuming a borrower's invocation of the right to reinstate renders acceleration ineffective, that did not occur in this case.

[¶30] Finally, relying on case law from other jurisdictions, *see, e.g.*, *Singleton v. Greymar Assocs.*, 882 So. 2d 1004, 1006-08 (Fla. 2004); *Cenlar FSB v. Malenfant*, 151 A.3d 778, 785-92 (Vt. 2016), Fannie Mae urges us to abandon our holding in *Johnson*, arguing that we misunderstood the effect of a dismissal with prejudice on subsequent foreclosure actions. Specifically, Fannie Mae argues that if the dismissal with prejudice in the 2011 action operates as an adjudication on the merits, *see supra* ¶ 17, then it was necessarily an adjudication in favor of the Deschaines, which requires us to treat the judgment of dismissal as if the court had determined that Fannie Mae failed to prove the elements of foreclosure, including default. *See Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700 (listing the elements of proof to obtain a foreclosure judgment). Fannie Mae goes on to argue that under the loan

documents a default is a condition precedent to acceleration, and so contrary to our holding in *Johnson*, which also involved a note where acceleration arose from a default, 1997 ME 220, ¶¶ 3, 8, 704 A.2d 866, the effect of the dismissal with prejudice was to invalidate the attempted acceleration because in effect the court determined that the Deschaines were not in default. *See Cenlar FSB*, 151 A.3d at 787-88. Fannie Mae argues that absent a prior adjudication of default or an effective acceleration, it remains free to file a new claim for foreclosure based on defaults that have allegedly occurred since the dismissal was entered, because those new grounds for foreclosure could not have been litigated in the 2011 action.

[¶31] We are not persuaded by Fannie Mae's challenges to *Johnson*'s continuing vitality. In a statement of material fact, Fannie Mae itself asserted—and the Deschaines admitted—that the Deschaines "failed to cure the default" that was the basis for the 2011 action. To the extent that Fannie Mae now argues that the dismissal with prejudice means that the Deschaines were not, in fact, in default, thereby rendering acceleration ineffective, its argument does not carry the day. Although the dismissal with prejudice in the 2011 action *operates* as an adjudication on the merits for purposes of res judicata, *see Johnson*, 1997 ME 220, ¶¶ 3, 8, 704 A.2d 866, that dismissal was

not *actually* an adjudication in favor of the Deschaines, but rather resulted from both parties' failure to comply with a scheduling order, *see Cope*, 2017 ME 68, ¶ 18, 158 A.3d 931 ("A dismissal with prejudice imposed as a sanction is not an adjudication of the merits of a plaintiff's claim. Rather, the imposition of a sanction represents the court's determination of a collateral issue: whether the party or attorney has abused the judicial process." (alteration and quotation marks omitted)). The dismissal with prejudice therefore does not undermine the undisputed facts in the summary judgment record demonstrating that, as we have concluded, *see supra* ¶ 23, the conditions precedent to acceleration—including default—were satisfied in the 2011 action. Further, because acceleration is entirely *the lender's* prerogative and occurs upon the filing of a foreclosure complaint, *see supra* ¶¶ 26-27, it does not depend on any judicial imprimatur in the form of a judgment in the lender's favor.

[¶32] Fannie Mae also contends that adherence to *Johnson* will result in a windfall to the Deschaines—namely a "free," or deeply discounted, house—and that this consequence is disproportionate to the bank's procedural default in the 2011 action.

[¶33] We disagree. To the contrary, abandoning our analysis in *Johnson* would result in a windfall to *Fannie Mae* and all other similarly situated mortgagees because those parties would become entitled to commence successive foreclosure actions indefinitely until they eventually win. In other words, mortgagees would be treated differently from all or most other litigants in other types of cases. We have held that a judgment entered for the defendant based on a procedural aspect of the case, such as the statute of limitations or some other grounds unrelated to the substance of the claim, bars another effort by the plaintiff to obtain the same relief from the same defendant. *See Hebron Acad., Inc. v. Town of Hebron*, 2013 ME 15, ¶¶ 29-30, 60 A.3d 774 (concluding that a municipal decision denying a tax abatement request based on the applicant's failure to meet a statute of limitations "was a decision on the merits for res judicata purposes" and barred a future declaratory judgment action concerning the tax status of the property); *Spickler v. Dube*, 644 A.2d 465, 467-68 (Me. 1994) (concluding that an involuntary dismissal for want of prosecution of a shareholders' derivative suit "serve[d] as a valid final judgment for the purposes of *res judicata*" and barred relitigation of the same cause of action). The salutary purposes supporting the doctrine of claim preclusion—to promote judicial economy,

and to conserve the resources of the courts and litigants by protecting them from sequential, piecemeal litigation, *see Wilmington Tr. Co.*, 2013 ME 94, ¶ 6, 81 A.3d 371—are as relevant and important in foreclosure litigation as in other areas of the law. We find no persuasive justification for carving out an exception to the settled doctrine of claim preclusion that would protect mortgagees from the adverse consequences of judgments dismissing their complaints with prejudice, particularly when unsuccessful litigants in all other categories of civil litigation would continue to be barred from relitigating their claims.[9]

[¶34] Further, our recent decisions contain multiple examples of proceedings—not at all unlike the case at bar—where mortgagees have failed to abide by court orders and established rules of court procedure, resulting in dismissals of their complaints. *See, e.g.*, *United States Bank v. Sawyer*, 2014 ME 81, ¶¶ 12-13, 17, 95 A.3d 608; *Bayview Loan Servicing v. Bartlett*, 2014 ME 37, ¶ 15-18, 22-23, 87 A.3d 741; *Bank of N.Y. v. Richardson*, 2011 ME 38, ¶¶ 2-6,

---

[9] We note that a mortgagee is not without an opportunity to avoid, where appropriate, the preclusive effect of the judgment that would dismiss with prejudice a foreclosure complaint as a sanction for the mortgagee's misconduct. For example, the mortgagee is entitled to notice and an opportunity to be heard before a court considers entering such a judgment, which should define the terms of the dismissal so that the scope and effect of that order will be clear to the parties, to us, and to courts addressing any subsequent attempt to relitigate a particular claim. *See Green Tree Servicing, LLC v. Cope*, 2017 ME 68, ¶¶ 20-22, 158 A.3d 931. Additionally, a mortgagee may also seek appellate relief from the terms of a judgment of dismissal with prejudice that it contends are oppressive—something Fannie Mae did not do after the court dismissed its 2011 complaint.

15 A.3d 756; *Johnson*, 1997 ME 220, ¶¶ 3, 8, 704 A.2d 866; *cf. also Homeward Residential, Inc. v. Gregor*, 2015 ME 108, ¶¶ 13-14, 21, 24, 122 A.3d 947. If we were to shield mortgagees and their attorneys from the preclusive effects of adverse judgments arising from deficient pretrial conduct, we would improperly tolerate and perhaps even foster within that limited group of parties and counsel an inappropriately casual attitude toward the processes necessary for the prompt, orderly, and fair administration of justice. *See Cenlar FSB*, 151 A.3d at 796 (Dooley, J., dissenting) (stating that the "message" that should be sent to mortgagees and counsel who engage in unacceptable litigation practices "should not be that they may file foreclosure action after foreclosure action until they finally win"); M. Wachspress, et al., Comment, *In Defense of "Free Houses*," 125 Yale L.J. 1115, 116 (2016) (stating that application of principles of res judicata in foreclosure cases will "provide[] a necessary market-correcting incentive to promote greater responsibility among foreclosure litigators").

[¶35] For these reasons, we reaffirm our analysis in *Johnson* as good and settled law, and conclude that because Fannie Mae exercised its right to accelerate, the promissory note became "indivisible" and the Deschaines' obligation to pay each monthly installment of principal and interest over the

life of the note merged into a unitary obligation to pay the entire debt. 1997 ME 220, ¶ 8, 704 A.2d 866. Contrary to Fannie Mae's contention, there could be no new breaches of the Deschaines' obligations following acceleration because, once the contract became unified as a result of that acceleration, the Deschaines did not have any continuing responsibility to make monthly installment payments.[10] Fannie Mae "cannot avoid the consequences of [its] procedural default" by alleging *grounds* for foreclosure that are different from those alleged in the 2011 action—in other words, by "attempting to divide a contract which became indivisible when [it] accelerated the debt in the first lawsuit." *Johnson*, 1997 ME 220, ¶ 8, 704 A.2d 866.

[¶36] Consequently, the matters presented for decision in the present foreclosure action were or might have been litigated in the 2011 action because in each case Fannie Mae sought "redress for the same basic wrong," *see Wilmington Tr. Co.*, 2013 ME 94, ¶¶ 7-8, 81 A.3d 371, and—as explicitly stated in both its 2011 and 2013 complaints—requested precisely the same form of relief: a judgment of foreclosure for "the entire outstanding principal

---

[10] In *Wilmington*, we concluded that a second action on the same note and mortgage was not precluded, in part because the mortgagor sought to recover for breaches that were not at issue in a prior action. 2013 ME 94, ¶ 12, 81 A.3d 371. There, however, the mortgagor had not accelerated the debt in the prior action, *see supra* n.8, and so the contract had not become unified.

amount, accrued interest thereon, and all other sums due under the [l]oan [d]ocuments." The third element of res judicata is therefore satisfied.

## III. CONCLUSION

[¶37] In sum, based on the application of the principles articulated in *Johnson* to the undisputed facts of this case, Fannie Mae's 2013 foreclosure complaint is barred by the judgment dismissing with prejudice its 2011 complaint. The court therefore did not err by granting the Deschaines' motion for summary judgment on Fannie Mae's foreclosure complaint. Additionally, because Fannie Mae is precluded from seeking to recover the underlying debt on the note, the court did not err by concluding, based on 14 M.R.S. § 6206, that the Deschaines were, as a matter of law, entitled to a judgment declaring that they hold title to the Lincoln property unencumbered by the mortgage in favor of Fannie Mae.

The entry is:

> Judgment affirmed.

---

Jeffrey J. Hardiman, Esq., and Dean J. Wagner, Esq., Shechtman Halperin Savage, LLP, Pawtucket, Rhode Island, and Marissa I. Delinks, Esq. (orally), Hinshaw and Culbertson LLP, Boston, Massachusetts, for appellant Federal National Mortgage Association

James F. Cloutier, Esq., Cloutier, Conley & Duffett, P.A., Portland, for appellees Patricia W. Deschaine and Paul J. Deschaine

L. Scott Gould, Esq., Cape Elizabeth, for amici curiae National Consumer Law Center and National Association of Consumer Advocates

Jeffrey Gentes, Esq., Jerome Frank Legal Services Corporation, New Haven, Connecticut, for amicus curiae Jerome Frank Legal Services Corporation

Thomas A. Cox, Esq. (orally), Portland, for amicus curiae Maine Attorneys Saving Homes

Catherine R. Connors, Esq., and John J. Aromando, Esq., Pierce Atwood LLP, Portland, for amici curiae Maine Bankers Association and The National Mortgage Bankers Association

Frank D'Alessandro, Esq., Pine Tree Legal Assistance, Portland, for amicus curiae Pine Tree Legal Assistance

Gerald F. Petruccelli, Esq., amicus curiae pro se

John A. Doonan, Esq., and Reneau J. Longoria, Esq., Doonan, Graves & Longoria, LLC, Beverly, Massachusetts, for amicus curiae Doonan, Graves & Longoria