MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:   2017 ME 230
Docket:     BCD-16-247
Argued:     February 7, 2017
Decided:    December 12, 2017

Panel:      ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


HEIDI M. PUSHARD et al.

v.

BANK OF AMERICA, N.A.


HUMPHREY, J.

[¶1]  Heidi M. Pushard and Jeffrey A. Pushard appeal from summary judgments entered in the Business and Consumer Docket (*Horton, J.*) in favor of Bank of America, N.A. (the Bank), on the Pushards' claims against the Bank for declaratory and injunctive relief, slander of title, and damages pursuant to 33 M.R.S. § 551 (2016).  We do not disturb the judgments on the Pushards' claims for slander of title, damages pursuant to section 551, and injunctive relief.  We vacate the judgment on the Pushards' claim for declaratory relief and remand the case for entry of summary judgment in the Pushards' favor on that claim.

## I. BACKGROUND

[¶2] In October 2011, the Bank initiated a foreclosure action against the Pushards in the Superior Court (Androscoggin County, *MG Kennedy, J.*). In its amended complaint, filed in May 2013, the Bank made the following allegations:

- In December 2006, the Pushards executed a promissory note in favor of Countrywide Home Loans, Inc., (Countrywide) in the amount of $145,000.

- As security for the note, the Pushards executed a mortgage on their property in Wales in favor of Mortgage Electronic Registration Systems, Inc. (MERS), "as nominee for" Countrywide.

- The Pushards failed to make the monthly mortgage payment due on April 1, 2008, and have failed to make all subsequent monthly mortgage payments.

- In 2008, MERS assigned the mortgage to Countrywide. In 2011, Countrywide assigned the mortgage to the Bank.

- The Bank became the holder of the promissory note.

- In May 2011, the Bank sent the Pushards notice of their default and of their right to cure the default "in conformity with Maine law." The Pushards received the notice in June 2011.

- The amount due "[a]s of September 6, 2011," was $191,717.91, including the "principal balance" of $142,882.25, an "escrow balance," interest, fees, and late charges.

[¶3]   The Bank sought judicial foreclosure of the Pushards' mortgage.[1] Among other documents attached to its complaint, the Bank included copies of the note and the mortgage.  Included in the note was a provision stating:

> If [the Pushards are] in default, the Note Holder may send [them] a written notice telling [them] that if [they] do not pay the overdue amount by a certain date, the Note Holder may require [them] to pay immediately the full amount of Principal which has not been paid and all the interest that [they] owe on that amount.

The mortgage contained a provision stating that the lender

> may require that [the Pushards] pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument . . . if all of the following conditions are met:
>
> (a) [The Pushards] fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured;
>
> (b) Lender sends to [the Pushards] . . . a notice that [meets various requirements]; . . . and
>
> (c) [The Pushards] do not correct the default stated in the notice from Lender by the date stated in that notice.

[¶4]   After a trial on the Bank's foreclosure complaint, the court entered a judgment in the Pushards' favor in October 2014.  The court determined that

---

[1]  With regard to the Bank's standing, the court concluded that Countrywide's (and, therefore, the Bank's) ownership interest in the mortgage was not compromised by the assignment from MERS to Countrywide.  The court determined that that assignment was superfluous because "Countrywide was the lender named on the note[] and in the mortgage" and "was thereby the mortgagee from the outset."  It therefore distinguished the case from *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶¶ 13-16, 96 A.3d 700, which we decided after the trial but before the court issued the judgment.

4

the Bank had failed to meet its burden to prove three of the eight elements of a foreclosure action: (1) a breach of a condition of the mortgage; (2) the amount due; and (3) that the notice of default that it sent to the Pushards complied with statutory requirements.[2]  *See Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700 ("A plaintiff seeking a foreclosure judgment must comply strictly with all steps required by statute.") (quotation marks omitted).  Neither the Bank nor the Pushards appealed from the judgment.

[¶5]  Five months later, in March 2015, the Pushards initiated the action giving rise to this appeal.[3]  In an amended complaint, based on the judgment in their favor in the Bank's foreclosure action and the Bank's failure to subsequently discharge the mortgage, the Pushards averred that they owe nothing on the note and sought a declaration that they are entitled to (1) a discharge of the mortgage and (2) an order enjoining the Bank from enforcing the note and mortgage and compelling the Bank to record a release of the mortgage.  They also asserted a claim for slander of title, alleging that the Bank's failure to discharge the mortgage prevents them from transferring clean title to the property or using it as collateral, and a claim for damages

---

[2]  The Bank's notice of default was defective because it did not meet the requirements found in 14 M.R.S. § 6111 (2011).

[3]  The Pushards filed their initial complaint in the Superior Court (Androscoggin County).  The case was transferred to the Business and Consumer Docket in May 2015.

pursuant to 33 M.R.S. § 551.[4] The Bank counterclaimed for breach of contract, unjust enrichment, and a declaratory judgment.

[¶6] The Pushards moved for summary judgment on all of their claims. *See* M.R. Civ. P. 56(a). In their statement of material facts, *see* M.R. Civ. P. 56(h)(2), they described, with reference to supporting evidence, the procedural history and outcome of the Bank's foreclosure action. Specifically, the Pushards asserted that (1) the Bank had "sought the entire amount due on the note and foreclosure of the mortgage"; (2) the court had entered a judgment in the Pushards' favor; and (3) the Bank had not thereafter discharged the mortgage.

[¶7] In its opposition to the Pushards' motion, the Bank effectively admitted all of the Pushards' stated facts.[5] The Bank submitted an opposing statement of material facts in which it asserted, with references to supporting evidence, that the Pushards had not made mortgage, tax, or insurance

---

[4] Title 33 M.R.S. § 551 requires a mortgagee to record a valid and complete release of the mortgage "[w]ithin 60 days after full performance of the conditions of the mortgage," and provides that a mortgagee that violates this release provision is "liable to an aggrieved party for damages . . . ."

[5] Although the Bank denied that it had "sought the entire amount due" on the note in the foreclosure action, because it did not provide a citation to the record in support of this denial, the fact is deemed admitted. *See* M.R. Civ. P. 56(h)(2), (4); *Halliday v. Henry*, 2015 ME 61, ¶ 7, 116 A.3d 1270.

6

payments on the property since 2008.  The Bank also filed its own motion for summary judgment on the Pushards' claims.[6]

[¶8]  The Pushards filed an opposing statement of material facts in response to the Bank's motion for summary judgment.  They did not properly controvert the Bank's statements that they had not made mortgage, tax, or insurance payments since 2008.  *See* M.R. Civ. P. 56(h)(2), (4); *Halliday v. Henry*, 2015 ME 61, ¶ 7, 116 A.3d 1270.

[¶9]  After a hearing, by order dated March 15, 2016, the court concluded that the Bank was entitled to a judgment as a matter of law on each of the Pushards' claims.  *See* M.R. Civ. P. 56(c).  The court therefore denied the Pushards' motion for summary judgment and granted the Bank's motion for summary judgment.  After the Bank's counterclaims were dismissed without prejudice by consent of the parties , the Pushards filed this timely appeal from the judgment in the Bank's favor.   14 M.R.S. § 1851 (2016); M.R. App. P. 2(b)(3) (Tower 2016).[7]

---

[6]  The Bank captioned its motion as a "motion for judgment on the pleadings or, in the alternative, for summary judgment on plaintiffs' complaint."  We treat it as a motion for summary judgments on the Pushards' claims.  *See* M.R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [M.R. Civ. P.] 56 . . . .").

[7]  This appeal was commenced before September 1, 2017, and therefore the restyled Maine Rules of Appellate Procedure do not apply.  *See* M.R. App. P. 1 (restyled Rule).

## II. DISCUSSION

A.    Justiciability

[¶10]   As a preliminary matter, the Bank argues that the Pushards' claims are nonjusticiable because resolution of those claims involves examining the res judicata effect of the judgment in the foreclosure action and no subsequent foreclosure action has been filed.

[¶11]  "Courts can only decide cases before them that involve justiciable controversies." *Homeward Residential, Inc. v. Gregor*, 2015 ME 108, ¶ 16, 122 A.3d 947 (quotation marks omitted).  "Justiciability requires a real and substantial controversy, admitting of specific relief through a judgment of conclusive character."   *Id.* (quotation marks omitted).   "A justiciable controversy involves a claim of present and fixed rights based upon an existing state of facts.  Accordingly, rights must be declared upon the existing state of facts and not upon a state of facts that may or may not arise in the future."  *Madore v. Me. Land Use Regulation Comm'n*, 1998 ME 178, ¶ 7, 715 A.2d 157 (quotation marks omitted).

[¶12]   The Bank relies on our decisions in recent cases in which the parties disputed whether a judgment in the mortgagor's favor would bar a future foreclosure action based on principles of res judicata, but in each case

8

we concluded that that issue did not present a justiciable controversy because no second action had yet been filed. *See U.S. Bank, N.A. v. Tannenbaum*, 2015 ME 141, ¶ 6 n.3, 126 A.3d 734; *Wells Fargo Bank, N.A. v. Girouard*, 2015 ME 116, ¶ 10, 123 A.3d 216.[8] Our holdings in those cases do not determine the result here because this case comes to us in a different posture. Although, as in *Girouard* and *Tannenbaum*, the Bank has not filed a second foreclosure action, there does exist a second action—the Pushards' action against the Bank—that presents a live controversy. As the trial court recognized, the Pushards' claims are "not contingent upon the occurrence of any future event," and "even if the Bank were content to do nothing to enforce the loan, the mortgage remains on record in the registry of deeds as a present encumbrance on the Pushards' property." The Pushards have claimed that they are entitled to relief based on "the existing state of facts." *Madore*, 1998 ME 178, ¶ 7, 715 A.2d 157 (quotation marks omitted). We therefore conclude that the Pushards' claims present a justiciable controversy and turn to the merits of their appeal. *See Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 16

---

[8] These cases are distinguishable from foreclosure cases in which a "court dismisses an action as a sanction for a plaintiff's misconduct" and must make clear the future effect of the order dismissing the case, including whether the judgment bars a subsequent action. *See Green Tree Servicing, LLC v. Cope*, 2017 ME 68, ¶ 22, 158 A.3d 931.

(1st Cir. 2014); *Annable v. Bd. of Envtl. Prot.*, 507 A.2d 592, 595 (Me. 1986); *Me. Sugar Indus. v. Me. Indus. Bldg. Auth.*, 264 A.2d 1, 4-5 (Me. 1970).

B.      Summary Judgments

[¶13]  "We review a [trial court's] ruling on cross-motions for summary judgment de novo, considering the properly presented evidence and any reasonable inferences that may be drawn therefrom in the light most favorable to the nonprevailing party, in order to determine whether there is a genuine issue of material fact and whether any party is entitled to a judgment as a matter of law." *Estate of Frost*, 2016 ME 132, ¶ 15, 146 A.3d 118; *see* M.R. Civ. P. 56(c).  "Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment per se." *Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 19, 116 A.3d 466 (quotation marks omitted).  "When the material facts are not in dispute, we review de novo the trial court's interpretation and application of the relevant statutes and legal concepts." *Id.*

[¶14]  The Pushards argue that the court erred by granting the Bank's motion for summary judgment and that they are entitled to judgments as a matter of law on all four of their claims against the Bank.  They contend that any future action by the Bank to recover on the note and the mortgage would

be barred by principles of res judicata, the note and mortgage are therefore unenforceable, and as a result the mortgage must be discharged.  We first address their section 551 and slander-of-title claims and conclude, without needing to address the res judicata effects of the judgment in the foreclosure action, that the court correctly entered summary judgments in the Bank's favor on those claims.  We then turn to the claims for declaratory and injunctive relief.

1.    Section 551

[¶15]  Title 33 M.R.S. § 551 provides that a mortgagee is "liable to an aggrieved party for damages" if the mortgagee fails to record a release of the mortgage "[w]ithin 60 days after full performance of the conditions of the mortgage."  The Pushards argue that the judgment in their favor on the Bank's foreclosure action means that their "performance under the note and mortgage was *effectively* fully performed."  (Emphasis added.)  We are not persuaded.

[¶16]  Because the Pushards did not properly controvert the Bank's statement that they have failed to make monthly mortgage payments since the spring of 2008, that fact is deemed admitted.  *See* M.R. Civ. P. 56(h)(2), (4).  In order for the Pushards to be entitled to relief pursuant to section 551,

therefore, we would need to hold that they have "full[y] perform[ed] . . . the conditions of the mortgage," 33 M.R.S. § 551, even though they have not made monthly payments as required by the mortgage. This would be an illogical result. *See MaineToday Media, Inc. v. State*, 2013 ME 100, ¶ 6, 82 A.3d 104 ("[W]e interpret [statutory] provisions according to their unambiguous meaning unless the result is illogical or absurd.") (quotation marks omitted). The judgment in the Pushards' favor in the Bank's foreclosure action established that the Bank was not entitled to a foreclosure judgment; it did not establish that the Pushards had fully performed the conditions of the mortgage. The trial court did not err by granting the Bank's motion for summary judgment on the Pushards' section 551 claim.

2.     Slander of Title

[¶17]  The Pushards' argument regarding their claim for slander of title also warrants little discussion. In order to succeed on that claim, the Pushards would need to prove that "(1) there was a publication of a slanderous statement disparaging [their] title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages." *Harvey v. Furrow*, 2014 ME 149, ¶ 25, 107 A.3d 604 (quotation marks omitted). The Pushards

argue that the "continued publication without a discharge" of the mortgage "constitutes a false publication of a slanderous statement disparaging [their] title." Even if we were to assume that the undischarged mortgage constitutes a "slanderous statement" that was "false" and that "the statement caused actual or special damages," there is nothing in the summary judgment record that could induce a fact-finder to determine that the Bank failed to discharge the mortgage with malice or a "reckless disregard" of the "falsity" of the encumbrance. *Id.* (quotation marks omitted); *see Morgan v. Kooistra*, 2008 ME 26, ¶ 34, 941 A.2d 447; *Onat v. Penobscot Bay Med. Ctr.*, 574 A.2d 872, 874-75 (Me. 1990). We therefore do not disturb the court's entry of a summary judgment in the Bank's favor on the Pushards' slander-of-title claim.

3.    Declaratory and Injunctive Relief

[¶18]    In order to resolve the question of whether either party is entitled to a judgment on the Pushards' claims for declaratory and injunctive relief, we must examine the effect of the judgment in the Pushards' favor in the foreclosure action. The Pushards argue that any further action by the Bank to recover on the note or mortgage would be barred by principles of res judicata, that the Bank therefore has no enforceable legal interest in the note or the property designated as collateral according to the mortgage, and that

the Bank therefore must discharge the mortgage to remove the unenforceable encumbrance on the property.

[¶19] "The doctrine of res judicata . . . is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once." *Beegan v. Schmidt*, 451 A.2d 642, 643-44 (Me. 1982). The term "res judicata" encompasses two different legal theories: claim preclusion, or "bar"; and issue preclusion, or "collateral estoppel." *Id.* at 644; *see Wilmington Tr. Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 7, 81 A.3d 371. Claim preclusion "prohibits relitigation of an entire 'cause of action' between the same parties or their privies, once a valid final judgment has been rendered in an earlier suit on the same cause of action"; and issue preclusion "prevents the reopening in a second action of an issue of fact actually litigated and decided in an earlier case." *Beegan*, 451 A.2d at 644; *see Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131 ("The collateral estoppel prong of res judicata is focused on factual issues, not claims . . . ."). Because the Pushards' argument depends on the legal effect of the Bank's unsuccessful foreclosure cause of action, as opposed to particular factual issues litigated in connection with that claim, the question here involves claim preclusion.

[¶20] "Claim preclusion bars the relitigation of claims if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Sullivan-Thorne*, 2013 ME 94, ¶ 7, 81 A.3d 371 (quotation marks omitted). At issue in this case is the third element—whether, given the judgment in the foreclosure action, the Bank could bring an action on the note or mortgage other than one that would present matters that were, or might have been, litigated in the foreclosure action.[9] *See id.*

[¶21] To analyze this third element, we "examine whether the same cause of action was before the court in the prior case." *Id.* ¶ 8 (quotation marks omitted). We define the parameters of the phrase "cause of action" by applying a "transactional test, which examines the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same

---

[9] The parties present no argument related to the first two elements of claim preclusion. We conclude that those elements are met here because the judgment in the Bank's foreclosure action was a final judgment on the merits and the issue raised by the Pushards' claims involves the same parties as the foreclosure action.

basic wrong." *Id.* ¶ 8 (alteration omitted) (citation omitted) (quotation marks omitted).

[¶22] As we discussed in *Federal National Mortgage Ass'n v. Deschaine*, 2017 ME 190, ¶¶ 19-21, 170 A.3d 230, we previously addressed this element of claim preclusion in the context of a mortgage foreclosure in *Johnson v. Samson Construction Corp.*, 1997 ME 220, 704 A.2d 866. In *Johnson*, the trial court concluded that the mortgagee's second foreclosure action was precluded by the dismissal, with prejudice, of an earlier foreclosure action. *Id.* ¶¶ 3-8. In the earlier foreclosure action, the mortgagee, Johnson, had claimed he was entitled to the entire amount of the unpaid principal pursuant to the note's acceleration clause. *Id.* ¶¶ 3, 8. We affirmed the judgment, explaining that

> Johnson's first cause of action . . . demanded payment of the entire unpaid principal balance. This suit was an action for the accelerated debt. Once Johnson triggered the acceleration clause of the note and the entire debt became due, the contract became indivisible. The obligations to pay each installment merged into one obligation to pay the entire balance on the note. . . . [The judgment in the first action] bars the complaint in this action which alleges precisely what the complaint in the first action alleged: that Samson defaulted on the note and that Johnson is entitled to a judgment for the amount due under the note. Johnson cannot avoid the consequences of his procedural default in this second lawsuit by attempting to divide a contract which became indivisible when he accelerated the debt in the first lawsuit.

16

*Id.* ¶ 8 (footnote omitted).[10]

[¶23]  Recognizing the ramifications of our holding in *Johnson*, the Bank argues that our reasoning in that case does not apply here because it did not "effectively" trigger the acceleration clauses of the note and mortgage in its foreclosure action against the Pushards.  The Bank relies principally on the language of 14 M.R.S. § 6111 and the acceleration clauses at issue.  We are not persuaded by these arguments.

[¶24]  It is helpful to review the ways in which acceleration clauses operate before we turn to the Bank's specific arguments.  An acceleration clause is a "loan-agreement provision that requires the debtor to pay off the balance sooner than the due date if some specified event occurs, such as failure to pay an installment or to maintain insurance."[11]  *Acceleration Clause*, Black's Law Dictionary (10th ed. 2014).  "Automatic" acceleration clauses are self-executing and render the entire indebtedness due immediately upon

---

[10]  In 2008, the Supreme Court of Ohio held, similarly, that res judicata barred a third foreclosure action after the mortgagee voluntarily dismissed two prior actions, concluding that after acceleration "each missed payment under the promissory note and mortgage did not give rise to a new claim . . . ."  *U.S. Bank Nat'l Ass'n. v. Gullotta*, 899 N.E.2d 987, 990 (Ohio 2008).

[11]  "Acceleration" means, in general terms, the "act or process of quickening or shortening the duration of something, such as payments or other functional activities."  *Acceleration*, Black's Law Dictionary (10th ed. 2014).  More specifically, as applied in the context of a secured loan, acceleration means the "advancing of a loan agreement's maturity date so that payment of the entire debt is due immediately."  *Id.*

some specified default; by contrast, where the acceleration clause is "optional," the lender must affirmatively exercise its option to declare the entire indebtedness due. *See Mullins v. IBCS Mining, Inc.*, No. 10-93-ART, 2011 U.S. Dist. LEXIS 116083, at *6 (E.D. Ky. Oct. 6, 2011) ("The optional acceleration clause [gave the lender] the right, but not the obligation, to accelerate payments on the Note."); *Snow v. Wells Fargo Bank, N.A.*, 156 So. 3d 538, 541 (Fla. Dist. Ct. App. 2015); *Found. Prop. Invs., LLC v. CTP, LLC*, 186 P.3d 766, 771-72 (Kan. 2008); Note, *Acceleration Clauses in Notes and Mortgages*, 88 U. Pa. L. Rev. 94, 95-96 (1939-40).

[¶25] An optional acceleration clause is therefore a bargained-for contract term that gives a lender, upon specified conditions such as the borrower's uncured default, the right to demand immediate payment of any remaining debt under the note and mortgage, including installment payments that would not otherwise have come due until a later date. An acceleration clause does not, on its own, entitle the lender to the sums to which it claims it has a legal right. Instead, it allows the lender to elect to hasten the due date of sums to which it is otherwise legally entitled.

[¶26] It has long been understood that it is the mortgagee's choice, or "election," whether—and when—to exercise its right under an optional

acceleration clause. *See, e.g.*, *Me. Sav. Bank v. Chee*, 576 A.2d 1358, 1358 (Me. 1990) (referring to "*the Bank's election to exercise* the acceleration clause of a promissory note secured by the mortgage") (emphasis added); *Mitchell v. Fed. Land Bank*, 174 S.W.2d 671, 676 (Ark. 1943) ("The *right to accelerate* the indebtedness is exercised by the unilateral act of the creditor . . . .") (emphasis added); Note, *Acceleration Clauses in Notes and Mortgages* at 95-98. In *Johnson*, for example, we repeatedly referred to the fact that it was the mortgagee who had the power to accelerate the debt—*he* "demanded payment of the entire unpaid principal balance," *he* "triggered the acceleration clause of the note and the entire debt became due," and *he* therefore "accelerated the debt in the first lawsuit." 1997 ME 220, ¶ 8, 704 A.2d 866.

[¶27] Bearing these principles in mind, we turn to the Bank's argument that it could not have triggered the acceleration clauses of the note and mortgage in the foreclosure action in this case. Title 14 M.R.S. § 6111 provides that, with respect to residential mortgages, a mortgagee "may not accelerate maturity of the unpaid balance of the obligation or otherwise enforce the mortgage because of a default" without first giving the mortgagor adequate notice of the default as described in the statute. The Bank relies on this statutory language to contend that because, as the foreclosure court

determined, it failed to give adequate notice of the default, it could not "effectively accelerate" the debt in its foreclosure action.[12]  Although section 6111 contains the term "accelerate," we conclude that the Legislature could not have intended for the statute to carry the meaning that the Bank propounds.  *See Farris v. Libby*, 141 Me. 362, 365, 44 A.2d 216 (1945) ("[W]e must assume that the [L]egislature did not intend an absurd result . . . .").

[¶28]  Compare, for example, the case at hand to a hypothetical case with identical facts except that the mortgagee sent to the mortgagor, and the mortgagor received, a notice of the default and right to cure that complied flawlessly with section 6111.  After the mortgagor failed to cure the default, the mortgagee initiated a foreclosure action in which it demanded, pursuant to an acceleration clause, immediate payment of the entire remaining balance on the note.  After hearing evidence, the foreclosure court concluded that the mortgagee had not proved its claim and entered a judgment accordingly, because even though the mortgagee met its burden to prove that it had provided adequate notice of the default pursuant to section 6111, it failed to prove the amount due, or that a breach of condition of the mortgage had

---

[12] The Bank does not explain what, according to its theory, *would* trigger an acceleration clause.

occurred, or one or more other substantive elements of proof in a foreclosure action. *See, e.g., Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700.

[¶29]  Plainly, the mortgagee in our hypothetical case could raise no argument that section 6111 prevented it from "effectively" triggering the acceleration clause, because that argument is based entirely on its own noncompliance with the statute.  According to the Bank's logic, the hypothetical mortgagee *has* triggered the acceleration clause, placing in issue all of the contractual installments as one indivisible debt obligation, and a subsequent action to recover on the note and mortgage would be precluded by the judgment in the mortgagor's favor.  In other words, the Bank's interpretation would mean that a mortgagee that loses on the merits in its foreclosure action based—even in part—on an inadequate notice of default has *not* triggered the acceleration clause and a subsequent action is not precluded.  But if the same mortgagee had lost on the merits due only to a failure of proof on one or more other elements of its foreclosure action, a subsequent action on the note and mortgage *is* precluded.

[¶30]  This would be an absurd result.  We cannot hold that the *reason* for a mortgagee's loss on the merits in its foreclosure action is dispositive of whether the judgment precludes a subsequent action on the same debt.  The

Bank has provided no reason why the Legislature would have created such a distinction. We therefore interpret section 6111 as we have since we decided *Chase Home Financial LLC v. Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508, as setting forth a required element of proof in a foreclosure action by providing that a mortgagee must give notice in accordance with section 6111 in order to *obtain a foreclosure judgment. See, e.g.*, *Girouard*, 2015 ME 116, ¶¶ 7-8 & n.3, 123 A.3d 216. We do not interpret section 6111 as a prohibition on a mortgagee's choice to exercise an acceleration clause.

[¶31] The language of the acceleration clauses at issue here does not alter our conclusion. It is true, as the Bank points out, that the acceleration provisions at issue here are optional, unlike the automatic acceleration clause in *Johnson*. The Bank does not explain why this distinction matters to the issue presented here, however, nor is any significance evident to us. An optional acceleration clause that has been exercised is no different—legally—than a self-executing acceleration clause. The essential inquiry, in examining whether claim preclusion applies, is what the mortgagee chose to litigate—or could have litigated—in the first action. *See Sullivan-Thorne*, 2013 ME 94, ¶ 7, 81 A.3d 371. That the acceleration provisions here are optional does not change the fact that the Bank could have—and indeed did—exercise its option

to put the entire remaining balance in issue in its foreclosure action, instead of simply demanding payment of past due amounts.  When the Bank chose to do so, "the contract became indivisible" and "[t]he obligations to pay each installment merged into one obligation to pay the entire balance on the note." *Johnson*, 1997 ME 220, ¶ 8, 704 A.2d 866.[13]

[¶32]  As we recently explained in *Deschaine*, the "filing of a foreclosure complaint constitutes a valid exercise of a mortgagee's acceleration right and is sufficient to provide notice to the mortgagor."  *Deschaine*, 2017 ME 190, ¶ 26, 170 A.3d 230 (quotation marks omitted); *see also Sullivan-Thorne*, 2013 ME 94, ¶ 12 n.4, 81 A.3d 371; *Chee*, 576 A.2d at 1358 (concluding that "the allegations of the complaint constituted a sufficient pleading that acceleration [pursuant to an optional acceleration clause] had occurred"); *Strong v. Stoneham Co-op. Bank*, 260 N.E.2d 646, 649 (Mass. 1970) ("[T]he commencement of an action before the tender of the amount due was one way in which [the] option [to declare the whole debt due] could be exercised.") (quotation marks omitted); *see also Nationstar Mortg., LLC v. Nelson*, No. 2:14-cv-00507-JDL, 2016 U.S. Dist. LEXIS 136660, at *12-18 (D. Me. Oct. 3,

---

[13] We also do not see the relevance of the note's provision, highlighted by the Bank, stating that "[e]ven if, at a time when [the Pushards are] in default, the Note Holder *does not require [them] to pay immediately in full* as described above, the Note Holder will still have the right to do so if [they are] in default at a later time."  (Emphasis added.)  This anti-waiver provision does not inform the inquiry here because the Bank *did* require payment immediately in full in the foreclosure action.

2016) (addressing the issue presented here and concluding that the mortgagee triggered the acceleration clause when it filed its foreclosure claim seeking the entire remaining balance due on the note); C.T. Drechsler, Annotation, *What is Essential to Exercise of Option to Accelerate Maturity of Bill or Note*, 5 A.L.R.2d 968, § 5a (2017) ("The institution of a suit for the whole debt is, of course, the most solemn form in which the holder can exercise his option."). As one court explained,

> the filing of suit for foreclosure amounts to exercise of the option of the mortgagee to declare the whole of the principal sum and interest secured by the mortgage due and payable. And the filing of suit to foreclose operates as notice to the mortgagor of the election to accelerate, where the election to do so is declared in the complaint . . . or, in the absence of such declaration, where the complaint on its face shows that foreclosure for the entire mortgage indebtedness is sought therein.

*Campbell v. Werner*, 232 So. 2d 252, 254 n.1 (Fla. Dist. Ct. App. 1970) (citations omitted).

[¶33] In sum, notwithstanding that the foreclosure court determined that the Bank failed to prove that its notice of default complied with section 6111, we conclude that the Bank triggered the acceleration clauses of the note and mortgage when it filed the foreclosure action demanding immediate payment of the entire remaining debt.

[¶34]  Because this case is not distinguishable from *Johnson*, which settles the question of the res judicata consequence of the Bank's failure to prove its foreclosure claim, we must address the Bank's argument that we should revisit our holding in that case.

[¶35]  As we explain in more detail in *Deschaine*, 2017 ME 190, ¶ 33, 170 A.3d 230, and for the reasons expressed in that opinion, an alteration of the approach we expressed in *Johnson* is not warranted because we identify no *legal* reason to adopt different res judicata rules for foreclosure cases than those that apply in every other type of case.  Pursuant to *Johnson*, because the Bank failed to prove its claim to the unitary obligation that it placed in issue in the foreclosure action, it no longer has any enforceable interest in the note or in the property set up as security for the note, and the Pushards have no further obligation to make payments on the note. 1997 ME 220, ¶ 8, 704 A.2d 866; *see Deschaine*, 2017 ME 190, ¶ 35, 170 A.3d 230 ("[T]here could be no new breaches of the [mortgagors'] obligations following acceleration because, once the contract became unified as a result of that acceleration, the [mortgagors] did not have any continuing responsibility to make monthly installment payments.").

[¶36]   Because the Bank is precluded from seeking to recover on the note or enforce the mortgage, the Pushards are entitled, as a matter of law, to the declaratory relief they seek.  We therefore must vacate the judgment in the Bank's favor on the Pushards' claim for declaratory relief and remand the case to the trial court to enter a judgment declaring that the note and mortgage are unenforceable and that the Pushards hold title to their property free and clear of the Bank's mortgage encumbrance.  *See Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230.[14]   Further, because a declaratory judgment "is a particularly efficacious method for quieting title to real property," *Welch v. State*, 2004 ME 84, ¶ 6 n.3, 853 A.2d 214 (quotation marks omitted), that can be recorded on the land records, we need not address the Pushards' claim for injunctive relief.

The entry is:

> Judgment in favor of the Bank on the Pushards' claim for declaratory relief is vacated. Remanded for entry of judgment in favor of Pushards consistent with this opinion. Judgment affirmed in all other respects.

---

[14]  Because the Bank's counterclaim for unjust enrichment was dismissed without prejudice and is not before us, we do not address any issues regarding the justiciability or merit of that claim, nor the availability of any process pursuant to M.R. Civ. P. 4A or 4B.  *See, e.g., Girouard,* 2015 ME 116, ¶ 10, 123 A.3d 216.

Joshua Klein-Golden, Esq. (orally), Clifford & Golden, PA, Lisbon Falls, for appellants Heidi M. Pushard and Jeffrey A. Pushard

John J. Aromando, Esq., and Catherine R. Connors, Esq., Pierce Atwood LLP, Portland, and Elizabeth P. Papez, Esq. (orally), Winston & Strawn LLP, Washington, D.C., for appellee Bank of America, N.A.

Business and Consumer Docket docket number CV-2015-28
FOR CLERK REFERENCE ONLY