MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 21
Docket:        Jud-24-3
Argued:        December 15, 2025
Decided:       February 26, 2026

Panel:         DOW, J., MURRAY, J., RAIMONDI, A.R.J., STOKES, A.R.J., and WORTH, A.R.J.*
Majority:      DOW, J., MURRAY, J., and STOKES, A.R.J.
Concurrence:   RAIMONDI, A.R.J., and WORTH, A.R.J.

IN RE CATHERINE R. CONNORS


DOW, J., MURRAY, J., and STOKES, A.R.J.

[¶1]  On October 11, 2024, the Committee on Judicial Conduct submitted a Report to the Supreme Judicial Court containing numerous factual and legal assertions with respect to conduct by Associate Justice Catherine R. Connors of the Maine Supreme Judicial Court.  On November 14, 2024, the Court remanded the matter for further proceedings before the Committee.  On December 16, 2024, the Committee submitted a new report, titled "Amended Report," which the Executive Clerk of the Court docketed as a "Second Report," recommending disciplinary action against Justice Catherine R. Connors for violation of M. Code Jud. Conduct R. 2.11(A).  On June 24, 2025, the Supreme Judicial Court

---

* Note by Reporter of Decisions: The members of the Panel for this matter were selected pursuant to M.R. Comm. Jud. Conduct & Jud. Disc. Procs. 8(B) by the Chief Justice of the Superior Court and the Chief Judge of the District Court.  The members of the Panel are Charles Dow, Judge of the District Court; Ann M. Murray, Justice of the Superior Court; Barbara Raimondi, Active Retired Judge of the District Court; William R. Stokes, Active Retired Justice of the Superior Court; and Patricia G. Worth, Active Retired Judge of the District Court.

promulgated Rule 8(B) of the Rules for the Committee on Judicial Conduct and for Judicial Disciplinary Proceedings, setting forth the procedure for disciplinary proceedings when the Supreme Judicial Court receives a report concerning the conduct of one of its own justices. The Rule requires that such matters be heard by a panel composed of jurists from the Superior and District Courts. On June 27, 2025, Chief Justice Robert Mullen of the Superior Court and Chief Judge Brent Davis of the District Court entered an order selecting a jurist to serve as the "hearing officer" and five jurists to serve as the panel to decide the matter. *See* M.R. Comm. Jud. Conduct & Jud. Disc. Procs. 8(B).

[¶2] The parties—the Committee on Judicial Conduct and Justice Connors—submitted a joint statement of facts. As a result, there is no hearing officer report. The parties submitted briefs and the matter was submitted to the Panel for consideration. On December 15, 2025, the Panel heard the parties' oral arguments.

## I. BACKGROUND

[¶3] The following facts are drawn from the parties' joint statement of facts and the other materials in the stipulated record. Catherine Connors practiced law for thirty-four years at the firm of Pierce Atwood before becoming an Associate Justice of the Maine Supreme Judicial Court in early 2020. She primarily practiced as an appellate attorney and represented clients in many

areas of the law. These clients included banks and banking interests, including the Maine Bankers Association (Maine Bankers) and the National Mortgage Bankers Association. At the time of her confirmation hearing, Attorney Connors had written and argued more than one hundred appeals, mainly before the Maine Supreme Judicial Court sitting as the Law Court. Attorney Connors never litigated a foreclosure case at the trial level.

[¶4] Before her appointment to the Supreme Judicial Court, in the case of *Pushard v. Bank of America, N.A.*, 2017 ME 230, 175 A.3d 103, which was a foreclosure appeal before the Law Court, Attorney Connors and Attorney John J. Aromando wrote, signed, and filed a brief dated September 14, 2016, on behalf of the lender and appellee Bank of America, N.A. On December 12, 2017, the Law Court decided the *Pushard* appeal, vacating the trial court's judgment in the Bank's favor and remanding for judgment in favor of the Pushards, the homeowners, due to the bank's failure to meet statutory notice requirements.

[¶5] Also before her appointment to the Supreme Judicial Court, in the foreclosure appeal *Federal National Mortgage Ass'n v. Deschaine*, 2017 ME 190, 170 A.3d 230, Attorney Connors and Attorney Aromando wrote, signed, and filed an amicus curiae brief with the Law Court on behalf of Maine Bankers and the National Mortgage Bankers Association. In *Deschaine*, on September 7, 2017, the Law Court held that res judicata principles barred a mortgage

company from bringing a second foreclosure action against a mortgagor involving the same property and based on the same note and mortgage.

[¶6]  After her appointment to the Supreme Judicial Court, Justice Connors sat on the appeal of *Finch v. U.S. Bank, N.A.,* 2024 ME 2, 307 A.3d 1049, which involved Maine foreclosure law and called for the Law Court to reconsider the res judicata issues that had previously been decided in *Deschaine* and *Pushard*, i.e., whether a note and mortgage were discharged in full by a foreclosure judgment for a mortgagor following a finding that the mortgagee failed to give the mortgagor statutorily effective notice of default and right to cure.  On June 6, 2022, Justice Connors participated in oral arguments on the *Finch* appeal.  Also pending before the Law Court at that time was the appeal of *J.P. Morgan Chase Acquisition Group v. Moulton*, 2024 ME 13, 314 A.3d 134, which considered whether a defective notice of default and right to cure resulted in the discharge in full of the note and mortgage, i.e., the same issue as in *Deschaine*.  In August 2022, the Law Court invited amicus briefs in *Moulton* and requested that counsel file supplemental briefs in *Finch*.

[¶7]  On September 27, 2022, Maine Bankers filed an amicus brief in *Moulton*.

[¶8] On September 30, 2022, Justice Connors wrote to the Judicial Ethics Advisory Committee (Advisory Committee) asking if she should recuse herself

from participation in the *Finch* and *Moulton* appeals. In her inquiry, she noted that Maine Bankers had filed an amicus brief in *Moulton* and that she had previously filed an amicus brief on behalf of Maine Bankers in *Deschaine*. In her inquiry to the Advisory Committee, Justice Connors stated that she became a Justice of the Maine Supreme Judicial Court in 2020 and that although she did not think that she was ethically required to do so, she had recused herself from every mortgage foreclosure appeal for two years. On October 4, 2022, the Advisory Committee informed Justice Connors that it did not believe that she needed to recuse herself from the *Finch* and *Moulton* appeals, stating that the two pending cases before the Law Court (*Finch* and *Moulton*) were "totally" separate from the *Deschaine* and *Pushard* matters decided five years earlier.

[¶9] On November 1, 2022, Justice Connors participated in the oral argument in *Moulton* and continued to sit on *Finch*. In *Finch*, Justice Connors voted with a 4-3 majority in the bank's favor, overturning the *Pushard* and *Deschaine* decisions. At no time during the pendency of the *Finch* and *Moulton* cases did any party, litigant, or participant object to Justice Connors's participation or file a motion for Justice Connors's disqualification or recusal.

[¶10] On January 18, 2024, after the Court published the *Finch* decision, Attorney Thomas Cox wrote to the Committee on Judicial Conduct alleging that Justice Connors had violated Rule 2.11(A) of the Code of Judicial Conduct by

failing to recuse herself from the *Finch* and *Moulton* appeals. *See* M.R. Comm. Jud. Conduct & Jud. Disc. Procs. 1(A) (providing for written complaints of judicial misconduct).

[¶11] The Committee wrote to Justice Connors and asked why she did not recuse herself from the *Finch* and *Moulton* appeals. Justice Connors responded to the Committee, and then the Committee asked further questions relating to Justice Connors's January 2020 testimony before the legislative committee then considering her nomination to the Court. Justice Connors replied from memory without having the transcript or audio recording of her testimony available to her. After evaluating Justice Connors's response to the Committee's questions, her e-mail exchange with the Advisory Committee, and her testimony at her judicial confirmation hearing, and examining Rule 2.11(A), the Committee found that Justice Connors had violated Canon 2, Rule 2.11(A). The Committee filed a report with the Court, which determined that it was not clear that the factual assertions and legal conclusions in the report were those of the Committee and that the report contained no recommendation that the Court take any particular disciplinary action. The Court remanded the matter to the Committee, which filed a second report in which it recommended that Justice Connors should receive a public reprimand for creating and maintaining the appearance of impropriety.

## II.  ANALYSIS

### A.    Legal Standard

[¶12]  The Committee on Judicial Conduct bears the burden of proving by a preponderance of the evidence that Justice Connors violated Rule 2.11(A) as the Committee has alleged in its report.  *See* M.R. Comm. Jud. Conduct & Jud. Disc. Procs. 8.[1]

[¶13]  The Committee argues that Justice Connors violated Rule 2.11(A) of the Code by participating in proceedings in which her impartiality might reasonably be questioned.  Rule 2.11(A) is found within Canon 2 of the Code. Canon 2 provides that "[a] judge shall perform the duties of judicial office impartially, competently, and diligently."  Rule 2.11(A) provides:

> (A)  A judge shall disqualify or recuse himself or herself in any proceedings in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

---

[1]  The Committee has emphasized throughout its argument that Justice Connors's answers to questions raised at her confirmation hearing before the Legislature's Joint Standing Committee on Judiciary supports its contention that she violated Rule 2.11(A) by not recusing from the *Finch* and *Moulton* cases.  The Panel has examined Justice Connors's testimony before the Judiciary Committee and notes that at least one legislator asked her questions relating to potential recusal issues with respect to her representation of banking interests and mortgage foreclosure cases.  In Maine, state judicial officers function under two separate systems of accountability: (1) the limited tenure of judicial officers under Art. VI, Sec. 4 of the Maine Constitution, combined with the appointment process in Art. V, Sec. 8; and (2) the Maine Code of Judicial Conduct.  This Panel's focus is on the latter.  The fact that members of the Legislature, in fulfilling their responsibilities under Art. V, Sec. 8, explored issues of potential recusal for Justice Connors in future foreclosure cases does not resolve the question of whether her involvement in the *Finch* and *Moulton* cases constituted a violation of Rule 2.11(A).

(1)  The judge has a personal bias or prejudice concerning a party or a party's lawyer, or the judge has personal knowledge of facts that are in dispute in the proceeding when the personal knowledge that would form the basis for disqualification has been gained outside the regular course of present or prior judicial proceedings.

(2)  The judge knows that the judge, individually or as a fiduciary, the judge's spouse, domestic partner, a person within the third degree of relationship to either of them, or any other member of the judge's family residing in the judge's household

> (a)  Is a party to the proceeding, or an officer, director, general partner, managing member, or trustee of a party;
>
> (b)  Is acting as a lawyer in the proceeding;
>
> (c)  Is a person who has more than a de minimis interest that could be substantially affected by the proceeding; or
>
> (d)  Is likely to be a material witness in the proceeding.

(3)  The judge, while a judge or a judicial candidate, has made a public statement, other than in a court proceeding, judicial decision, judicial opinion, or judicial administrative matter, that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy.

(4)  The judge

> (a)  Served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association;

> (b)  Served in government employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding or has publicly expressed in such capacity an opinion concerning the merit of the particular matter in controversy; or
>
> (c)  Was a material witness concerning the matter.

M. Code Jud. Conduct R. 2.11(A)(1)-(4).

[¶14]  To determine whether a justice has violated Rule 2.11(A), we must apply an objective reasonableness test that asks whether a reasonable observer of the judicial proceeding presided over by the subject justice, informed of all of the surrounding facts and circumstances, would have reasonable doubts as to the subject justice's impartiality in that proceeding.  *See* M. Code Jud. Conduct Preamble; M. Code Jud. Conduct R. 2.11(A); M. Code Jud. Conduct R. 2.11 advisory notes to 2015 amend.; *see also Allphin v. United States*, 758 F.3d 1336, 1343-44 (Fed. Cir. 2014); *United Farm Workers of Am., AFL-CIO v. Super. Ct.,* 216 Cal. Rptr. 4, 9-10 (Cal. Ct. App. 1985); *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000); *Cheney v. U.S. Dist. Ct.*, 541 U.S. 913, 924 (2004).  The reasonable observer is regarded as a "thoughtful observer rather than . . . a hypersensitive or unduly suspicious person."  *In re Sherwin Williams Co.,* 607 F.3d 474, 478 (7th Cir. 2010).

[¶15]  Rule 2.11(A) requires justices to recuse in matters where their participation might reasonably create a question as to their impartiality. However, where there is "no reasonable basis for recusal, a judge is obliged not to recuse[.]" M. Code Jud. Conduct R. 2.11 advisory notes to 2015 amend.  The Code requires a justice to "hear and decide matters except when disqualification or recusal is required," M. Code Jud. Conduct R. 2.7, and cautions that "a judge who disqualifies himself or herself for no reason other than an unfounded and meritless claim of partiality, has abused the judge's discretion." M. Code Jud. Conduct R. 2.11 advisory notes to 2015 amend. (quoting *In re Michael M.*, 2000 ME 204, ¶ 15, 761 A.2d 865).

[¶16]  There is also a presumption that judges will fulfill their duty of impartiality faithfully.  *Bond v. Bond*, 127 Me. 117, 141 A. 833, 836 (1928) ("Our government is a 'government of laws and not of men.' In addition to their legal learning, judges are presumably selected because of their ability to lay aside personal prejudices and to hold the scales of justice evenly.  The presumption is that they will do so."); *Cheney*, 541 U.S. 913, 928 (2024) ("The people must have confidence in the integrity of the Justices, and that cannot exist in a system that assumes them to be corruptible by the slightest friendship or favor, and in an atmosphere where the press will be eager to find foot-faults."); *Armenian Assembly of Am., Inc., v. Cefesjian*, 783 F. Supp. 2d 78, 91 (D.D.C. 2011) ("A

reasonable observer must assume that judges are ordinarily capable of setting aside their own interest and adhering to their sworn duties to 'faithfully and impartially discharge and perform all the duties' incumbent upon them.")

## B. Justice Connors did not violate Rule 2.11(A) by sitting on the *Finch* and *Moulton* appeals

[¶17]   A complaint about a judge's impartiality must be carefully reviewed when the complaint is filed after the case in question has been decided.  *See Samara Mem'l Trust v. Kelly, Remmel & Zimmerman*, 2014 ME 107, ¶¶ 25-27, 102 A.3d 757.  In this case, the complaint was filed by an advocate for housing issues and was filed only after *Finch* had been decided.   The complainant was affiliated with an entity entitled "Maine Attorneys Saving Homes," and he had filed an amicus curiae brief on behalf of that entity in *Deschaine*.  The possibility of *Finch* and/or *Moulton* changing the law in Maine was well known to the bar; the Law Court asked for amicus briefing in *Moulton* and supplemental briefing in *Finch*.

[¶18]  None of the attorneys in *Finch* or *Moulton*, and none of the lawyers who filed amicus briefs in *Moulton*, raised any issue about Justice Connors's impartiality.[2]

---

[2] In fact, there were several attorneys who appeared in *Pushard* and/or *Deschaine* who were also involved in *Finch* and/or *Moulton*:  Clifford and Golden (*Pushard* and *Finch*), the National Consumer Law Center (*Deschaine* through L. Scott Gould and *Moulton* through Andrea Bopp Stark), Doonan Law Office (*Deschaine* and *Moulton*), Frank D'Alessandro for Pine Tree Legal Assistance in *Deschaine* and

12

[¶19]  As noted above, the operative portion of Rule 2.11(A) provides: "A judge shall disqualify or recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned" and then specifies four examples of circumstances in which a judge's impartiality might reasonably be questioned.  There has been no suggestion by the Committee that Justice Connors had any personal biases or prejudices concerning any of the parties in *Finch* and *Moulton* or their attorneys; nor does the evidence support any such finding.  Nor has there been any suggestion that the *Finch* or *Moulton* appeals involved anyone living in Justice Connors's household or within a third degree of relation to her or her spouse.  Nor does this case involve Justice Connors's making any public statements that committed or appeared to commit her to rule a certain way in the proceedings.  Upon review, it is readily apparent that the evidence in the stipulated record does not implicate any of the first three circumstances explicitly identified by Rule 2.11(A).  The fourth special circumstance listed in Rule 2.11(A), requiring recusal when the judge "served as a lawyer in the matter in controversy," requires more explanation.

[¶20]  It is clear that Justice Connors did not participate in the trial court proceedings in *Finch* or *Moulton*.  While Justice Connors wrote and filed a brief

for Maine Equal Justice in *Moulton*, and Pine Tree Legal Assistance through D'Alessandro in *Deschaine* and Pine Tree Legal Assistance through Jonathan Selkowitz in *Moulton*. None of these attorneys or any other attorneys raised any issues regarding Justice Connors's sitting on *Finch* and/or *Moulton*.

on behalf of appellee Bank of America, N.A. in *Pushard* and wrote and filed an amicus curiae brief on behalf of Maine Bankers in *Deschaine, Deschaine* and *Pushard* were not the "matters in controversy" in *Finch* or *Moulton* within the meaning of Rule 2.11(A)(4)(a). The matters in controversy in *Pushard, Deschaine, Finch,* and *Moulton* all concerned different properties and different parties.[3] Each of the defendants—Pushard, Finch, Moulton, and Deschaine— had a separate agreement with a different plaintiff that held the mortgage on a separate piece of property. Maine Bankers was not a party to any of the above litigation and had no interest in the Lincoln, Wales, Durham, or Buckfield real estate at issue in those matters. Rather, Maine Bankers filed an amicus brief in the *Moulton* case on a substantially similar legal issue to that which then-Attorney Connors had argued for Bank of America in the *Pushard* case and for Maine Bankers in an amicus brief in *Deschaine.*[4] While the legal issues are substantially similar, the matters in controversy are not.

[¶21] Moreover, the record shows that Justice Connors was aware of her obligations under Rule 2.11(A) and made efforts to address a possible question

---

[3] The controversy and issue in *Pushard v. Bank of America, N.A.*, 2017 ME 230, ¶ 1, 175 A.3d 103, related to property located in Wales. The controversy and issue in *Federal National Mortgage Association v. Deschaine*, 2017 ME 190, 170 A.3d 230, related to property in Lincoln. On the other hand, the controversy and issue in *Finch v. U.S. Bank, N.A.*, 2024 ME 2, 307 A.3d 1049, related to property in Durham, and the controversy and issue in *J.P. Morgan Mortgage Acquisition Corp. v. Moulton*, 2024 ME 13, 314 A.3d 134, related to property in Buckfield.

[4] Maine Bankers' amicus brief in *Deschaine* is not in the record before the Panel.

about her impartiality by seeking input from the Advisory Committee on Judicial Ethics (Advisory Committee). Justice Connors's request to the Advisory Committee regarding the *Moulton* and *Finch* matters identified the most important underlying circumstances and asked whether she had a duty under Rule 2.11 to recuse herself from the matters. The Advisory Committee responded that it unanimously believed that recusal was not necessary in either case.

[¶22] There is no question that Justice Connors did not violate any of the four enumerated circumstances set forth in Rule 2.11(A), and the Committee has not claimed otherwise. Rather, the Committee argues that Justice Connors's conduct violated the general catchall provision in Rule 2.11(A): that based on the totality of the circumstances, *Finch* and *Moulton* were proceedings in which Justice Connors's impartiality might reasonably be questioned. *See* M. Code Jud. Conduct R. 2.11(A).

[¶23] We are not persuaded by the Committee's general contention that a reasonable observer might question whether Justice Connors was biased or prejudiced in favor of banking interests because of her previous advocacy for banking interests and advocacy for those interests in *Deschaine* and *Pushard*.

[¶24] When Rule 2.11(A) was written, the drafters clearly had four circumstances in mind when a judge's impartiality might reasonably be

questioned. The drafters did not identify the circumstance of a prior client coming before a judge as requiring recusal—other than in the same matter in controversy. A judge must recuse only if the judge served as a lawyer for a client "in the matter in controversy." Rule 2.11(A)(4)(a). By not explicitly requiring recusal of a judge when the judge served as a lawyer on any matter for that client, but carving out the circumstances of the judge having served as a lawyer for the client in "the matter in controversy" as requiring recusal, it is clear that the rule does not require recusal when the judge was a lawyer for a client on some other case. *See generally Musk v. Nelson*, 647 A.2d 1198, 1201 (Me. 1994) ("[A] well-settled rule of statutory interpretation states that express mention of one concept implies the exclusion of others not listed."); *Wescott v. Allstate Ins.,* 397 A.2d 156, 169 (Me. 1979) ("The maxim—expressio unius est exclusio alterius—is well recognized in Maine as in other states. It is a handy tool to be used at times in ascertaining the intention of the lawmaking body.") There is no suggestion that Justice Connors possessed any confidential information as a result of representing Maine Bankers that she used in deciding *Finch* or *Moulton*, and that is logical given that Maine Bankers did not have any interest in any of the real estate involved in *Finch* or *Moulton*.

[¶25] Nor did the drafters of Rule 2.11(A) identify as a circumstance requiring recusal a judge's having previously litigated a particular legal issue as

an attorney. Moreover, case law from other jurisdictions is clear that a lawyer's advocacy for a client on particular issues does not require recusal on those issues if the lawyer becomes a judge. *See Hoke Cnty. Bd. Of Educ. v. State*, 896 S.E.2d 720, 723 (N.C. 2022) (collecting cases). Moreover, the Eleventh Circuit Court of Appeals has remarked, "Courts have uniformly rejected the notion that a judge's previous advocacy for a legal, constitutional, or policy position is a bar to adjudicating a case, even when that position is directly implicated in the case before the court." *Carter v. W. Pub. Co.*, 1999 WL 994997, at *9 (11th Cir. Nov. 1, 1999) (citing numerous cases). The Committee has not submitted any case law to the contrary.

[¶26]  The drafters of Rule 2.11(A) could easily have included the circumstances of (1) a prior client appearing before a judge on any matter or (2) a legal issue the judge previously litigated coming before the judge as specific examples requiring the judge to recuse, but did not. These circumstances do not require recusal.

[¶27]  A reasonably well-informed observer would understand that law firms represent a variety of clients and that lawyers advocate for clients even when their clients' beliefs or interests conflict with the lawyers' own personal beliefs or interests. *See Philip Morris USA Inc. v. United States Food & Drug Admin.,* 156 F. Supp. 3d 36 (D.D.C. 2016). A reasonably well-informed observer

would also recognize that the positions for which a lawyer advocates when representing clients do not necessarily reflect the lawyer's own personal beliefs. No reasonable person, for instance, would think that because a lawyer has represented defendants in criminal cases that the lawyer favors breaking the law. *Philip Morris USA Inc. v. United States Food & Drug Admin.,* 156 F. Supp. 3d 36, 50 (D.D.C. 2016). The same is true here—it is not reasonable for a well-informed person to question Justice Connors's impartiality in *Finch* and *Moulton* merely because she advocated for particular banking interests in foreclosure cases in her previous work as a lawyer.

[¶28] Clearly there was a similarity between the legal issues in *Pushard* and *Deschaine* and the legal issues in *Finch* and *Moulton*. However, because (1) a judge is not required to recuse in matters involving prior clients unless the representation was on the same "matter in controversy," and (2) a judge is not required to recuse in matters involving prior legal issues she litigated, a well-informed person should not believe that the judge's impartiality might reasonably be questioned on either of these two bases. A well-informed observer is a person who believes that, generally, judges follow their obligation to perform their duties impartially. A well-informed person could not reasonably question a judge's impartiality when she is following the law which does not require her recusal. While a person might reasonably question

whether the law is appropriate, a well-informed reasonable person must accept the law when determining whether a judge has committed an ethical violation. When a judge follows the law on recusal, she cannot be found to have committed an ethical violation.

[¶29]  For all of the above reasons, we find that the Committee failed to meet its burden of proof and therefore dismiss the Report.

The entry is:

> Report dismissed.

---

RAIMONDI, A.R.J., and WORTH, A.R.J., concurring

[¶30]  Although we agree with the Panel that the report should be dismissed, we conclude that Justice Connors violated the Code of Judicial Conduct.

## I.  BACKGROUND

[¶31]  We agree with the Panel's description of the background, with changes for the purposes of this discussion set out below.

[¶32]  Before joining the Maine Supreme Judicial Court in 2020, Catherine Connors practiced law for thirty-four years with Pierce Atwood.  In 2016, she and an associate lawyer wrote, signed, and filed a brief on behalf of appellee

Bank of America in *Pushard v. Bank of America, N.A.,* 2017 ME 230, 175 A.3d 103*.* In 2017, the Maine Supreme Judicial Court, sitting as the Law Court, vacated the trial court's judgment in favor of Bank of America and remanded for judgment in favor of the homeowner, Pushard.

[¶33] During that same time, Attorney Connors represented amicus participants the Maine Bankers Association and the National Mortgage Bankers Association in *Federal National Mortgage Ass'n v. Deschaine*, 2017 ME 190, 170 A.3d 230. She and an associate wrote, signed, and filed an amici curiae brief on behalf of those associations. In 2017*,* the Law Court ruled in favor of the homeowner and against the mortgagee.

[¶34] In 2020, Attorney Connors was nominated to the Maine Supreme Judicial Court to serve as an associate justice. During her confirmation hearing before the Legislature's Joint Standing Committee on the Judiciary, statements by legislators and questions asked of her made it clear that some legislators—reasonable, well-informed persons—were concerned about the appearance of impropriety were she, once confirmed, to participate in cases in her areas of expertise. She said to the Committee that "[t]hen as to client, clients of Pierce Atwood, any Pierce Atwood case that comes, I believe it's appropriate to recuse myself" for the term of seven years. She said that "when there's any doubt" she would "defer on the side of recusal." She also said that "if it's somebody who

was once (her) client," there would be a recusal for a significant period of time. She made reference to representing parties on amicus briefs in foreclosure litigation appeals and said, "So I'd probably be recused from, well, certainly from those particular clients." Transcript of Confirmation Hearing of Catherine R. Connors, Esq., Joint Standing Committee on Judiciary 31-36 (Jan. 30, 2020), *available at* https://perma.cc/6YN9-QLDS.

[¶35]  Attorney Connors was confirmed to the Maine Supreme Judicial Court in, and has served since, 2020.  She retains a financial interest in an unknown amount in her former firm, Pierce Atwood.  Pierce Atwood is an affiliate member of the Maine Bankers Association, Justice Connors's former client.

[¶36]  The foreclosure case of *Finch v. U.S. Bank, N.A.*, 2024 ME 2, 307 A.3d 1049, called for the Law Court to reconsider the res judicata issue decided in *Deschaine* and *Pushard*: whether a note and mortgage were discharged in full by a foreclosure judgment for a mortgagor following a finding that the mortgagee failed to give the mortgagor the statutorily required notice of default and right to cure.  In June 2022, Justice Connors participated in oral arguments on *Finch*.  The case of *Morgan Chase Acquisition Group v. Moulton*, 2024 ME 13, 314 A.3d 134, before the Court at about the same time as *Finch,* called for the Court to consider whether a defective notice of default and right to cure resulted

in the full discharge of a note and mortgage, the same issue as in *Deschaine*. In August 2022, the Law Court invited amicus briefs in *Moulton* and requested that the attorneys in *Finch* file supplemental briefs. The Maine Bankers Association, represented by new counsel, filed an amicus brief in *Moulton.*

[¶37]   In September 2022, Justice Connors wrote to the Advisory Committee on Judicial Ethics asking for its informal opinion about whether she should recuse herself from participation in *Finch* and *Moulton*. She directed the Advisory Committee's attention to the provision in Rule 2.11 mandating recusal when "the judge served as a lawyer in the matter in controversy." In response, in October 2022, the Advisory Committee gave its opinion that she did not need to recuse herself from the *Finch* and *Moulton* appeals based on its conclusion that the two pending cases were separate from the *Deschaine* and *Pushard* matters decided five years earlier.

[¶38]  In November 2022, Justice Connors participated in oral argument in the *Moulton* appeal and continued to sit on both the *Finch* and *Moulton* appeals. On January 11, 2024, the Law Court issued its decision in *Finch*. Justice Connors voted with a 4-3 majority in the bank's favor, overturning *Pushard* and *Deschaine*.[5]

---

[5] No party or participant in *Finch* and *Moulton* filed a motion for Justice Connors's disqualification or recusal.

[¶39] On January 18, 2024, Attorney Thomas Cox wrote to the Committee on Judicial Conduct alleging that Justice Connors violated Rule 2.11(A) of the Code of Judicial Conduct by failing to recuse herself from the *Finch* appeal and by continuing her involvement in the companion appeal in *Moulton,* decided by the Law Court on January 30, 2024.

[¶40] In response to Attorney Cox's complaint, the Committee on Judicial Conduct wrote to Justice Connors asking why she did not recuse herself from the *Finch* and *Moulton* cases. After Justice Connors's initial and subsequent response, the Committee on Judicial Conduct found that Justice Connors violated Canon 2, Rule 2.11(A) of the Code of Judicial Conduct. The Committee on Judicial Conduct then submitted a report to the Maine Supreme Judicial Court. The Court remanded the matter back to the Committee because the report did not make clear whether findings and conclusions in the report were those of the Committee and did not make a recommendation on the discipline to be imposed. The Committee filed an "Amended Report," which the Executive Clerk of the Court forwarded to the Chief Justice of the Superior Court and the Chief Judge of the District Court pursuant to M.R. Comm. Jud. Conduct & Jud.

Disc. Procs. 8(B).  The Chief Justice of the Superior Court and Chief Judge of the District Court selected the Panel.

## II.  DISCUSSION

### A.    Violation of Rule 2.11(A)

[¶41]  The Committee bears the burden of proving by a preponderance of the evidence that Justice Connors violated Rule 2.11(A).

[¶42]  The Committee argues that Justice Connors violated Rule 2.11(A) of the Code by participating in proceedings in which her impartiality might reasonably be questioned.  The operative portion of the rule provides that "a judge shall disqualify or recuse himself or herself in any proceeding in which the judge's impartiality *might* reasonably be questioned" (emphasis added).  The Rule's use of the word "might" sets a low standard.

[¶43]  Rule 2.11(A) provides that four specific circumstances require recusal.  The Committee does not allege, nor does the evidence support, that any of the four specific circumstances set out in Rule 2.11(A) were present.

[¶44]  In asking whether a judicial officer has violated Rule 2.11(A), the examiner must apply an objective reasonableness test, asking whether a reasonable observer of the judicial proceeding, informed of all the surrounding facts and circumstances, would have reasonable doubts as to the judicial officer's impartiality.  As the Panel  has pointed out, Panel's Opinion ¶ 14, the

reasonable observer is regarded as a "thoughtful observer rather than . . . a hypersensitive or unduly suspicious person." *In re Sherwin Williams Co.,* 607 F.3d 474, 478 (7th Cir. 2010).

[¶45]  Nevertheless, the evidence demonstrates that Justice Connors's conduct violated the general catchall provision: based on the totality of the circumstances, *Finch* and *Moulton* were proceedings in which Justice Connors's impartiality might reasonably be questioned.

[¶46]  The evidence is straightforward.  A reasonable observer might question whether Justice Connors was biased in favor of banking interests because of her previous advocacy for banking interests and specific advocacy for those interests in *Deschaine* and *Pushard*, in light of the participation of her former client, the Maine Bankers Association, in which her former firm maintains a membership.

[¶47]  It is correct that, as the Panel has noted, a reasonably well-informed observer would understand that lawyers and law firms represent a variety of clients and advocate for clients even when their clients' beliefs or interests conflict with their own personal beliefs or interests.  Panel's Opinion ¶ 27.  The Panel has also correctly pointed out that case law advises that a lawyer's advocacy for a client on an issue does not mandate recusal on that issue if the lawyer becomes a judge.  Panel's Opinion ¶ 25.

[¶48]  The facts here, however, shed a different light on what an ordinary, reasonable person might perceive.

[¶49]  As a partner at Pierce Atwood, then-Attorney Connors wrote, signed, and filed a brief before the Law Court on behalf of Bank of America in the *Pushard* case and wrote, signed, and filed an amicus brief before the Court on behalf of the Maine Bankers Association in *Deschaine.*

[¶50]  Justice Connors knew from her confirmation hearing that reasonable persons were concerned about the appearance of impropriety should she participate in appeals implicating her areas of expertise and her former clients.

[¶51]  Once the Maine Bankers Association filed its amicus brief in *Moulton*, a reasonable observer might have reasonably questioned the justice's impartiality.[6]  *Finch* and *Moulton* implicated one key dispute: whether the 2017 *Pushard* and *Deschaine* decisions should be overturned.  Seen in this light, the

---

[6]  Indeed, some of the arguments that the Maine Bankers Association raised in its amicus brief in *Moulton* are substantially the same arguments that Justice Connors raised on behalf of the Association in *Deschaine.*  *Compare* Amici Brief of the Maine Bankers Ass'n and the Natl Mortg. Bankers Ass'n at 19-22, *Federal National Mortgage Association v. Deschaine*, 2017 ME 190, 170 A.3d 230 (No. Pen-16-316) (arguing that barring a second foreclosure action based on subsequent defaults is bad public policy and would be unfair), *with* Brief of Amicus Curiae Maine Bankers Association at 17-21, *J.P. Morgan Acquisition Corp. v. Moulton*, 2024 ME 13, 314 A.3d 134 (No. Oxf-21-412)  (arguing that barring a second foreclosure action based on subsequent defaults is bad public policy and would be unfair).  In such a situation, confronted with her own arguments and asked to vote for the position favoring the legal interests she advocated for as a private attorney, a reasonable person might doubt whether Justice Connors would be able to analyze the *Moulton* appeal impartially.

fact that a lawyer who had represented the losing side in *Pushard* and who had argued for the Maine Bankers Association in its amicus brief in *Deschaine* was now sitting as a justice on the *Finch* and *Moulton* appeals might cause a reasonable person to question that justice's impartiality.

[¶52]  In sum, we conclude that Justice Connors violated Rule 2.11(A) by participating in the *Finch* and *Moulton* appeals, proceedings in which her impartiality might reasonably be questioned.

## B.    Disciplinary action

[¶53]  Rule 8(C)(iii) of the Rules for the Committee on Judicial Conduct and for Judicial Disciplinary Proceedings provides:

> (iii) If the panel concludes that no violation of the Code has been proved by a preponderance of the evidence, or that the violation is not of a sufficiently serious nature as to warrant formal disciplinary action, the panel shall dismiss the report and may also refer the matter to the Committee for informal correction if appropriate.  If the panel concludes that a violation warrants formal disciplinary action, the panel may impose upon the judicial officer who is the subject of the report any one or more of the forms of discipline permitted by law, such as admonishment, reprimand, suspension, fine and probation.  A divided decision need not identify how panel members voted.

[¶54]  The determination of any appropriate sanction must be based on "multiple factors, including the judge's professional history, the context within which the violations occurred, the harm to the litigants and public, the seriousness of the violations, the judge's acknowledgement of the violations

and understanding of the impact on the litigants, and the prospects for ensuring public trust and confidence in the judge's work in the future." *In re Holmes*, 2011 ME 119, ¶ 4, 32 A.3d 1011 (citing M. Code Jud. Conduct Preamble).

[¶55]  As discussed above, Justice Connors was aware of her obligations under Rule 2.11(A) and made efforts to address a possible appearance of impropriety by asking the Advisory Committee on Judicial Ethics for advice.

[¶56]  As importantly, the effect of the improper activity upon the judicial system or others has not been shown to be substantial.  *Finch* was decided by a 4-3 vote and *Moulton* by a 5-2 vote.  It is not possible to predict the outcome in *Finch* were Justice Connors to have recused herself because there is no way of knowing whether the Court would have replaced her, in the usual manner, with an active retired justice.  In *Moulton,* the Law Court noted that it was guided by its decision in *Finch*.  Justice Connors was not a determinative vote; it is not possible to predict how the Court would have proceeded, and ruled, were Justice Connors to have recused herself in *Finch* and *Moulton.*  Accordingly, because *Finch* overturned the holdings in *Deschaine* and *Pushard,* Justice Connors's recusal in *Moulton* would not have resulted in a change in Maine foreclosure law.

[¶57]  In sum, the evidence demonstrates by a preponderance of the evidence that Justice Connors violated Rule 2.11(A) by not recusing from the

*Finch* and *Moulton* appeals. However, in light of the circumstances and the state of the law, this violation does not warrant formal disciplinary action. Having found a violation but finding that no disciplinary action is warranted for the violation, we agree that dismissal of the Committee's report is the proper disposition of the matter. *See* M.R. Comm. Jud. Conduct & Jud. Disc. Procs. 8(C)(iii).

---

John A. McArdle, III, Esq. (orally), Maine Committee on Judicial Conduct, Augusta, for the Committee on Judicial Conduct

James M. Bowie, Esq. (orally), Benjamin J. Wahrer, Esq., and Caitlin Ross Wahrer, Esq., Norman, Hanson & DeTroy, LLC, Portland, for Catherine R. Connors